**In re Keith D. RUSSELL and Dorothy Russell, Debtors.**

**Bankruptcy No. 91–14721–B7.**

United States Bankruptcy Court, S.D. California.

Feb. 28, 1996.

Kenneth C. Noorigian, Eric L. Hoffland, Gorman & Noorigian, San Diego, CA, for Debtors.

Laurie E. Wright, San Diego, CA, for Carlos and Linda Shannon.

## MEMORANDUM DECISION

PETER W. BOWIE, Bankruptcy Judge.

Keith and Dorothy Russell ("Debtors") sold certain real property to Carlos and Linda Shannon ("Shannons") for $715,000 in 1991. Twelve days later, debtors filed a petition under chapter 7. The Shannons were never listed as creditors of the debtor. Several years later, a plumbing break disclosed that the property suffered from soil subsidence problems. The Shannons subsequently discovered that such a break had occurred before, that debtors were aware of the subsidence problem, and that debtors had failed to disclose this problem prior to purchase. The damages from the break

were estimated at over $100,000 and the Shannons brought an action to recover these damages from the debtors in Superior Court.

The debtors now bring this motion to reopen the case, add the damage claim, and discharge any debt to the Shannons through their bankruptcy on the theory that the Shannons are unintentionally omitted creditors. The Shannons assert that this is a post-petition claim and not subject to the previous bankruptcy.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

The present case raises the continually troubling issue of when a claim accrues within the bankruptcy context. There is determinative case law concluding that Congress intended the term "claim" to have a broad scope for bankruptcy purposes in order to assure the debtor a fresh start. *See Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). Indeed, the term "claim" is defined in the Bankruptcy Code to mean:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....

11 U.S.C. § 101(5).

The dilemma is simple to define; the answer is less so. The Shannons bought a home, without knowledge or disclosure of any soil subsidence problem. The sellers then filed bankruptcy, did not list the Shannons as possible creditors, and obtained their discharge. When the subsidence problem manifested itself, the Shannons learned of the pre-existing problem and sued the sellers to recover their losses. The sellers assert that the Shannons' claim is a pre-petition claim arising from the sales transaction. Because it is a pre-petition claim, it was discharged along with their other pre-petition unsecured debts. Therefore, argue the debtors, they

should be allowed to reopen their case to amend their schedules to add the Shannons' claim so that it can be shown to have been discharged.

■ In the routine circumstance of an omitted debt in a no asset case, this Court need not grant a motion to reopen because a state court has concurrent jurisdiction to determine if the nature of the debt made it a dischargeable one even though it was not listed in the debtor's schedules. *In re Beezley,* 994 F.2d 1433 (9th Cir.1993); *In re Franklin,* 179 B.R. 913 (Bankr.E.D.Cal. 1995). That circumstance is made more difficult, however, when the threshold issue of whether a claim is prepetition or postpetition is raised. State courts are accustomed to adjudicating whether a cause of action exists and is ripe for resolution. However, it is generally recognized that:

> while non-bankruptcy law governs the *existence* of a claim under the Code, it is not dispositive of the *time* at which a claim arises under the Code.

*In re National Gypsum Co.,* 139 B.R. 397, 405 (N.D.Tx.1992). As that court noted:

> It is immaterial for the purpose of bankruptcy, whether EPA's claims against the debtors are ripe for adjudication under CERCLA, as long as all the elements that can give rise to liability under CERCLA have occurred pre-petition.

*Id.* The time when a claim arises—a "claim" within the meaning of 11 U.S.C. § 101(5)—is an issue peculiar to bankruptcy law.

In recent years, the issue of when a claim arises for bankruptcy purposes has been considered most carefully in the environmental cleanup and mass tort cases, with some differing results. In the Ninth Circuit, the central decision is *In re Jensen,* 995 F.2d 925 (1993). In that case, a representative of a state agency visited the business site several weeks after a Chapter 11 petition was filed for the business. The representative noted the presence of toxic chemicals, wrote to the owner about the potential risk of harm, and requested prompt amelioration. Within a few days thereafter, the owner filed a personal bankruptcy under Chapter 7. The owner's bankruptcy was concluded a year later, in 1985. In 1987, a separate state

agency notified the owner that he would be held personally liable for the cleanup costs. Subsequently, the owner's bankruptcy was reopened to allow him to list the state agency as a creditor and to bring an adversary proceeding to determine that the owner's liability for cleanup costs had been discharged. The Bankruptcy Court held that the agency's claim arose postpetition, so it was not discharged. The Bankruptcy Appellate Panel reversed, so the agency appealed to the Ninth Circuit.

The Court of Appeals reviewed different analyses utilized by various courts. It recognized that a few courts, including the Bankruptcy Court in *Jensen,* required that each element of a CERCLA claim must exist, including the incurring of costs before a claim arose. The Ninth Circuit noted that that approach had not gained currency and had been rejected by the BAP in *Jensen.*

Another approach, relied upon by the BAP in *Jensen,* was the conduct test. Specifically, if there was a prepetition release or threat of release of toxic substances, then the conduct had occurred and the claim had arisen, regardless of who knew of it.

The Court of Appeals looked also to what it called the " 'relationship' test". *In re Jensen,* 995 F.2d at 929. That test "establishes the date of a bankruptcy claim 'at the earliest point in the relationship between the debtor and the creditor.'" *Id.* To illustrate, the court cited to *In re Edge,* 60 B.R. 690 (Bankr.M.D.Tenn.1986), and wrote:

> For example, although a debtor dentist's pre-petition negligence may escape detection until post-petition, a bankruptcy claim arises at the point of the dentist's negligent act.

995 F.2d at 929.

The Ninth Circuit then reviewed each of the approaches. It rejected the approach used by the Bankruptcy Court, that each of the elements must exist, including response costs. The court concluded that approach was inconsistent with the breadth of the definition of "claim" under the Code and would render meaningless certain provisions of the definition, such as contingent and unmatured.

The appellate court also found difficulty with the conduct test used by the BAP. In support, it quoted one source:

> One commentator has noted that "[d]espite Congress's repeal of the 'provability' requirement and its broad definition of 'claim', nothing in the legislative history or the Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights existed." (Citation omitted.)

995 F.2d at 930.

The court next turned to the relationship test. Quoting from the same source, the court indicated that there should be some nexus between the relationship and the prepetition situation which gives rise to the claim or a creditor, particularly a governmental agency creditor, so that the creditor " 'may anticipate its potential claim.'" *Id.*

Finally, the Ninth Circuit turned to a decision which it felt "carefully balanced" the "sometimes competing policy goals of environmental law and the bankruptcy code...." The court looked to the decision in *In re National Gypsum,* 139 B.R. 397 (N.D.Tx. 1992), as the source for what it called the "fair contemplation" test. That test provides:

> "all future response and natural resource damages cost based on pre-petition conduct that can be fairly contemplated by the parties at the time of [d]ebtors' bankruptcy are claims under the [Bankruptcy] Code."

995 F.2d at 930. The Ninth Circuit then noted:

> In re National Gypsum spells out certain indicia of fair contemplation ("knowledge by the parties of a site in which a PRP [potentially responsible party] may be liable, NPL ['National Priorities List'] listing, notification by EPA of PRP liability, commencement of investigation and cleanup activities, and incurrence of response costs...."

*Id.*

The Ninth Circuit then reached its conclusion under the facts in *Jensen.* The original agency representative who discovered the toxic chemicals on the business site was from the California Regional Water Quality Control Board. The agency pressing the owner for cleanup costs was the California Department of Health Services. The Ninth Circuit decided to impute to the Department of

Health Services the knowledge of the Water Quality Control Board, gained in the two weeks before the owner filed his individual bankruptcy. Having done that, the court concluded: "the state had sufficient knowledge of the Jensens' potential liability to give rise to a contingent claim for cleanup costs before the Jensens filed their personal bankruptcy...." 995 F.2d at 931. Therefore, the California Department of Health Services claim was discharged by the owner's personal bankruptcy.

■ Based on the facts and the holding in *Jensen,* we can conclude that if the claimant has knowledge (even imputed knowledge) of the existence of the risk or threat of contamination at a particular site, then the claim arose by that point in time for purposes of the Bankruptcy Code. The next challenge is to take the teachings of *Jensen* and attempt to apply them to the circumstances of the present case, where there was a pre-petition relationship between the claimants and the debtors, established by the sales transaction consummated 11 days before the debtors filed bankruptcy. However, the claimants had no knowledge pre-petition of the particular risk of subsidence on this property.

The Ninth Circuit in *Jensen* cited to the decision in *In re Edge,* 60 B.R. 690 (Bankr. M.D.Tenn.1986) as illustrative of the relationship test. As previously noted, the claimant was a patient treated by the debtors/dentists pre-petition. At the time the bankruptcy was filed by the debtors, the claimant had no knowledge that there was anything wrong with the treatment she had received, much less that it was negligently performed. The court concluded that the claim arose at the time of the negligent act. 60 B.R. at 705. The court recognized that at the time of the filing of the bankruptcy the claim was contingent and unmatured, "but it is a significant personal right of the victim which may mature into a traditional act in court." *Id.*

In *In re Piper Aircraft Corp.,* 58 F.3d 1573 (11th Cir.1995), the Eleventh Circuit Court of Appeals adopted a relationship test which it applied in a Chapter 11 reorganization case. Because of the latter circumstance the appellate court recognized claims so long as they arose before confirmation of the plan. Rephrasing for Chapter 7 purposes what the court chose to call the "Piper test":

[A]n individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before [filing] create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before [filing] between an identifiable claimant or group of claimants and that prepetition conduct.

58 F.3d at 1577. It is particularly helpful to the present analysis to understand that indicia of a relationship for purposes of the "Piper test" include "contact, exposure, impact, or privity".

■ After review of the foregoing authorities, and others, this Court concludes that where debtor committed the act or omission complained of prior to filing bankruptcy, and the claimant has a relationship to the act or omission at the time, such as being the patient or a contracting party, the claim arose at that point in time even if there has been no indication or manifestation of the consequences of the act or omission. It is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made misrepresentations to induce the making of the contract. Thus, a contingent claim arises at that point in time, although it may never mature. The policies of the Bankruptcy Code are best served by an inclusive interpretation of "claim", as 11 U.S.C. § 101(5) contemplates. If the breach of contract damages would have been discharged in a no-asset Chapter 7 if scheduled, they are discharged as if they were scheduled. *In re Beezley,* 994 F.2d 1433, 1436–37 (9th Cir.1993). If they are nondischargeable under 11 U.S.C. § 523(a), the creditor should have the opportunity to establish that fact, whether in bankruptcy court or elsewhere. *Id.*

■ Consequently, where the claimants had a prepetition relationship to the debtor and the circumstance which gives rise to their claim, it is within the fair contemplation of the parties that a contingent claim exists

at that point in time. That contingent claim is subject to the subsequent bankruptcy proceeding and may be discharged, depending on its nature and whether its nondischargeability is timely asserted. In the present case, the Shannons had a prepetition relationship with the debtors about the sale and purchase of the residence, from which the Shannons' present claim for subsidence damage flows. Accordingly, the Shannons' claim is a prepetition claim.

Because the Shannons' claim is a prepetition claim, and because the Shannons are entitled to an opportunity to have a determination made about whether their claim is nondischargeable, debtors' motion to reopen is granted, subject to the payment of any necessary fees. Debtors shall have thirty (30) days from the date of entry of this Order within which to file and serve any amendment to their Schedules. The Shannons shall have sixty (60) days from the date of service upon them of the amendment adding them as creditors within which to file any complaint objecting to the dischargeability of the debt owed to them, pursuant to 11 U.S.C. § 523(a).

IT IS SO ORDERED.