208 B.R. 46 (1997)
In re Siraj HASSANALLY and Erika Hassanally, Debtors.
Siraj HASSANALLY and Erika Hassanally, Appellants,
v.
REPUBLIC BANK; Steven Earl Smith, Chapter 7 Trustee, Appellees.
BAP No. CC-96-1403-OBV, Bankruptcy No. LA 92-12667 KL, Adversary No. 95-01685 KL.
United States Bankruptcy Appellate Panel of the Ninth Circuit.
Argued and Submitted October 23, 1996.
Decided March 14, 1997.
*47 Al Funada, Schuchman & Funada, Torrance, CA, for Siraj and Erika Hassanally.
Steven L. Bergh, Prenovost, Normandin, Bergh & Dawe, Santa Ana, CA, for Republic Bank.
Before: OLLASON, BRANDT[1] and VOLINN, Bankruptcy Judges.

OPINION
OLLASON, Bankruptcy Judge:

OVERVIEW
In this appeal Siraj and Erika Hassanally ("Debtors") contend that the bankruptcy court erred by holding that a state court action against them for the tort of negligent construction could proceed to the extent it arose under state law postpetition. We Reverse.

STATEMENT OF FACTS
On November 13, 1989, Debtors executed a promissory note in favor of Republic Bank ("bank") in the amount of $1,641,500, and entered into a construction loan agreement. The funds were used by Debtors to finance the construction of a 12-unit condominium complex in Gardena, California, completed in 1990. Debtors owned the property site, and secured the note with a construction trust deed in favor of the bank. Siraj Hassanally was the alleged general contractor.
Debtors defaulted under the note and filed for Chapter 11[2] relief on January 22, 1992; the case was converted to Chapter 7 on May 12, 1993. The bank was listed as a secured creditor.
On July 27, 1993, the Chapter 7 trustee filed a Report of No Asset Case. The deadline for filing nondischargeability complaints was September 14, 1993; the bank did not file a complaint. Debtors received a discharge on October 19, 1993, and the case was closed on November 9, 1993.
In October of 1993, the bank obtained stay relief to foreclose upon the property. The bank alleged that upon taking possession of the property and preparing it for resale, it noticed several instances of negligent construction. The bank expended funds to make repairs. The foreclosure sale was held *48 on December 22, 1993, and the bank purchased the property.
Two years later, on September 11, 1995, the bank filed a complaint in Los Angeles County Superior Court, naming Debtors as the defendants. The complaint alleged, inter alia, negligent construction of the project by Debtors.[3]
On November 29, 1995, Debtors' bankruptcy case was reopened to allow them to file a complaint requesting sanctions against the bank for its violation of the discharge injunction. Debtors filed a motion for summary judgment. Debtors filed the declaration of Siraj Hassanally, who averred that the project was completed in 1990, and that it passed all building code inspections. Hassanally stated that the project was periodically inspected by the bank's vice presidents.
The bank filed the declaration of Vice President Laurie Duncan, who averred that less than three percent of construction loans end up in foreclosure, so that foreclosure was not fairly contemplated. Furthermore, Ms. Duncan averred that less than one percent of construction projects result in negligent construction actions; thus defects giving rise to such actions also were not fairly contemplated. Ms. Duncan also stated that the inspections made by the bank employees of the property were for the purpose of assuring that the loan funds were allocated per the bank's instructions.
The bankruptcy court heard the motion on February 22, 1996, and its findings and conclusions and judgment were entered on April 18, 1996. The court effectively granted summary judgment in favor of the bank. It denied Debtors' complaint for sanctions concerning the claim for negligent construction, and ordered that the bank could proceed with the state tort action to the extent it was a postpetition claim under state law. The court concluded:
3. The claim for negligent construction . . . is based on a tort theory of liability has [sic] not been discharged to the extent that such liability arises out of Republic Bank's post-petition ownership or possession of the real property is [sic] based on a tort claim which did not arise under state law until after the commencement of the debtors' bankruptcy case.
Findings of Fact and Conclusions of Law (with disjunctive interlineation).
Debtors timely appealed the judgment.

ISSUE
The sole issue on appeal is whether the bankruptcy court erred by concluding that § 524 does not enjoin the bank from pursuing its state law cause of action against Debtors for negligent construction because its claim was actually a prepetition claim under federal law that was discharged.

STANDARD OF REVIEW
The Panel reviews the bankruptcy court's summary judgment de novo. In re Kim, 163 B.R. 157, 159 (9th Cir.BAP 1994), aff'd, 62 F.3d 1511 (9th Cir.1995). Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R. Bankr.P. 7056/Fed.R.Civ.P. 56(c). Whether the state court suit is barred by the permanent injunction of § 524 is a question of law. In re Beeney, 142 B.R. 360, 362 (9th Cir.BAP 1992). Issues of statutory interpretation are reviewed de novo. In re Jensen, 995 F.2d 925, 927 (9th Cir.1993).

DISCUSSION
Section 727(b), as follows, provides for a discharge:
(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim *49 . . . is filed . . . and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.
Section 524(a) states the effect of a discharge:
(a) A discharge in a case under this title
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . .
Only debts that arise prepetition are dischargeable, and only actions for prepetition claims are enjoined by § 524(a)(2). In re Kewanee Boiler Corp., 198 B.R. 519, 526 (Bankr.N.D.Ill.1996); § 727(b). It has been held that the main purpose of § 524 is "to make it unequivocally unnecessary for the debtor to respond in the state court action." In re Walker, 180 B.R. 834, 842 (Bankr. W.D.La.1995).
Debtors contend that the bank is attempting to hold them personally liable for a prepetition claim. Furthermore, they contend that the bank did not contest the dischargeability of the claim, and there is no category for finding the negligence claim nondischargeable under the Code. On the other hand, the bank contends that its claim, pursuant to state law, did not arise until it acquired the property postdischarge.
Absent an overriding federal interest, the existence of a claim in bankruptcy is generally determined by state law. Butner v. United States, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979).
[T]he term "debt" is defined in § 101(12) as "liability on a claim." Claim is defined in § 101(5) as:
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . .
11 U.S.C. § 101(5); see also In re Daghighfekr, 161 B.R. 685, 687 (9th Cir. BAP 1993).
Although the concept of provability was important under the former Bankruptcy Act, it was abandoned in the Bankruptcy Code. In re Vasu Fabrics, Inc., 39 B.R. 513, 517 (Bankr.S.D.N.Y.1984).
The definition of "claim" was expanded and no longer are claims not fixed as to liability on the date of the filing precluded from participation. The result of the broad definition of "claim" and the abandonment of the concept of provability is that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. . . . Id. (citations omitted).
In re Upstairs Gallery, Inc., 167 B.R. 915, 917-18 (9th Cir. BAP 1994).
In this case it is to the bank's benefit to pursue Debtors' postbankruptcy assets because all debts which would have been dischargeable in a no-asset Chapter 7 case if scheduled, are discharged as if they were scheduled. In re Beezley, 994 F.2d 1433, 1434 (9th Cir.1993). The bank's claim was based on Debtors' negligent conduct. Thus, if it had been determined to be a prepetition claim, it would have been discharged in the Chapter 7 case. The movant bank had the burden of proving its assertion that its claim was postpetition and not prepetition.[4]
*50 In California, a civil action ordinarily accrues when the wrongful act is done and liability arises, i.e., upon the occurrence of the last fact essential to the cause of action. Angeles Chemical Co., Inc. v. Spencer & Jones, 44 Cal.App.4th 112, 51 Cal.Rptr.2d 594, 597 (1996); Cal.Civ.Proc.Code § 312 (West 1982). The orthodox rule in cases of damage to real property is that the harmful acts occurred, and thus the action accrued, at the time of the construction. See Kirby v. Albert D. Seeno Constr. Co., 11 Cal.App.4th 1059, 14 Cal.Rptr.2d 604, 607 (1992). This rule is not applied, however, because latent defects are often involved. Instead, the traditional approach of delayed accrual of negligence cases is appliedthe statute of limitations does not commence to run until the damage to the plaintiff occurs. Id; Oakes v. McCarthy Co., 267 Cal.App.2d 231, 73 Cal. Rptr. 127, 141 (1968). Where a construction defect is discovered later, the tortious injury cannot occur until the plaintiff either has actual knowledge of the injury or cause, or could have discovered the injury or cause through reasonable investigation. Kirby, 14 Cal.Rptr.2d at 607. Thus, the discovery rule dictates when the statute of limitations begins to run. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 245 Cal.Rptr. 658, 662, 751 P.2d 923 (1988). If state law determined when the bank's claim arose, the short answer would be that it arose when the bank discovered or reasonably could have discovered the defects, and the bank averred that it discovered the defects postpetition. State law is predicated not so much on when the claim arose as it is on affording additional time to pursue the claim by a creditor who justifiably did not have knowledge to timely institute action thereon.[5]
While state law determines the existence of a claim based on a cause of action, federal law determines when the claim arises for bankruptcy purposes. Johnson v. Home State Bank, 501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) (holding that the question of whether an interest is a claim for bankruptcy purposes is "to be resolved by reference to `the text, history, and purpose' of the Bankruptcy Code'") (quoting Farrey v. Sanderfoot, 500 U.S. 291, 298, 111 S.Ct. 1825, 1830, 114 L.Ed.2d 337 (1991)); Jensen, 995 F.2d at 928.
The Code includes contingent and unmatured rights to payment within the definition of claim. By providing for the "broadest definition of claim" Congress intended to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5807-08. This policy promotes the debtor's fresh start. See Ohio v. Kovacs, 469 U.S. 274, 279, 105 S.Ct. 705, 707-08, 83 L.Ed.2d 649 (1985).
A contingent claim is a debt "`which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" In re Fostvedt, 823 F.2d 305, 306 (9th Cir.1987) (citations *51 omitted). The broad language used to define "claim" "points us in a direction, but provides little indication of how far we should travel." In re Chateaugay Corp., 944 F.2d 997, 1003 (2nd Cir.1991). In other words, courts must decide at what point a contingency is too remote to be called a claim. Bankruptcy courts have applied different tests to determine if a claim arose prepetition.
In this case, the bankruptcy court's legal conclusion was that the debt was not discharged to the extent it was a postpetition cause of action under state law. Under the "right to payment" or "accrued state law claim" test, which the bankruptcy court applied, a claim does not arise in bankruptcy until an action has accrued under relevant substantive nonbankruptcy law. See United States v. Union Scrap Iron & Metal, 123 B.R. 831, 835 (D.Minn.1990); In re M. Frenville Co., Inc., 744 F.2d 332, 335-37 (3rd Cir.1984), cert. denied sub nom. M. Frenville Co., Inc. v. Avellino & Bienes, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). The Ninth Circuit and other circuits have rejected this test, under a variety of fact patterns, on the grounds that it interprets the term claim more narrowly than Congress intended. See Lemelle v. Universal Mfg. Corp., 18 F.3d 1268, 1275-1277 (5th Cir.1994) (discussing cases); In re Chicago, Milwaukee, St. Paul & Pacific R. Co., 6 F.3d 1184, 1192-93 (7th Cir.1993); Jensen, 995 F.2d at 929 ("[t]o hold that a claim for contribution arises only when there is an enforceable right to payment appears to ignore the breadth of the statutory definition of `claim'"); Chateaugay, 944 F.2d at 1004; In re A.H. Robins Co., Inc., 63 B.R. 986, 989-92 (Bankr.E.D.Va.1986), aff'd sub nom. Grady v. A.H. Robins Co., 839 F.2d 198 (4th Cir.), cert. dismissed sub nom. Joynes v. A.H. Robins Co., Inc., 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); In re Edge, 60 B.R. 690, 696-705 (Bankr.M.D.Tenn.1986); In re Johns-Manville Corp., 57 B.R. 680, 686-90 (Bankr.S.D.N.Y.1986). The foregoing authority presents a clear message that the right to payment or accrued state law claim test is no longer viable in the Ninth Circuit. We hold that the bankruptcy court erred as a matter of law by applying this test to grant summary judgment to the bank.
The alleged negligent conduct occurred at the time of the construction, prepetition. Under the "conduct" approach, if a debtor's conduct forming the basis of liability occurred prepetition, a claim arises when that conduct occurs, even though the injury resulting from this conduct was not manifest at the commencement of the case. In re Jensen, 127 B.R. 27, 32 (9th Cir. BAP 1991), aff'd, 995 F.2d 925 (9th Cir.1993) (affirming, but on the basis of the fair contemplation test); A.H. Robins, 839 F.2d at 202-03 (1988) (future uncertain event of manifestation of injury from use of contraceptive device made claim contingent at time the device was implanted); Edge, 60 B.R. at 696-705 (court concluding in a tort case that a tort claim arose for purposes of the Code's automatic stay provision at the time the patient received negligent treatment from the debtor dentist).[6] Although the facts of this case fit neatly into a conduct analysis, both parties to this appeal argue that the Jensen "fair contemplation" test applies and supports their respective arguments.
The Ninth Circuit Court of Appeals rejected the conduct test as applied to the environmental claims in Jensen because it conflicted with CERCLA's goal of cleaning up the environment quickly. Jensen, 995 F.2d at 930. In Jensen, the California Regional Water Quality Control Board had prepetition knowledge of the presence of toxic chemicals. The California Department of Health Services demanded, postpetition, the cleanup of leakage caused by the chemicals. Jensen held that the water board's knowledge could be imputed to the health department. Thus, both the tortious conduct (the threatened leakage) and a fair contemplation of the respective obligations *52 of the parties occurred prepetition. Jensen, 995 F.2d at 931.
Jensen concluded that the fair contemplation analysis was the only approach giving "adequate consideration to the policy goals of the environmental laws and the bankruptcy code":
The only meaningful distinction that can be made regarding CERCLA claims in bankruptcy is one that distinguishes between costs associated with prepetition conduct resulting in a release or threat of release that could have been "fairly" contemplated by the parties; and those that could not have been "fairly" contemplated by the parties.
Jensen, 995 F.2d at 930 (quoting In re Nat'l Gypsum Co., 139 B.R. 397, 407-08 (N.D.Tex. 1992)).[7]
Jensen also made a broader criticism of the conduct test:
The debtor's conduct approach adopted by the BAP in this case is not immune from criticism, either. One commentator has noted that "[d]espite Congress's repeal of the `provability' requirement and its broad definition of `claim,' nothing in the legislative history or the Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights existed." Discharging CERCLA Liability in Bankruptcy, 76 Minn.L.Rev. at 348.
Jensen, 995 F.2d at 930 (emphasis added).
Most authorities consider the Jensen fair contemplation test equivalent to the "conduct plus," "prepetition relationship" or Piper test. See In re Piper Aircraft Corp., 162 B.R. 619, 627 (Bankr.S.D.Fla.), aff'd, 168 B.R. 434 (S.D.Fla.1994), aff'd sub nom. Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp., 58 F.3d 1573 (11th Cir.1995). See also Lemelle,[8] 18 F.3d at 1277; AMES ET AL., Texaco II, supra. The Piper test provides:
[A]n individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.
Piper Aircraft, 58 F.3d at 1577.
Recent cases involving future claims[9] have utilized the prepetition relationship test to *53 bring the claims within the bankruptcy proceeding. This appeal does not involve a future claim in the sense of an injury manifesting itself years after the negligent conduct in an unknown claimant. The bank simply discovered original construction defects which it then repaired.
Debtors further contend that the facts of this case are similar to In re Russell, 193 B.R. 568 (Bankr.S.D.Cal.1996), where the bankruptcy court applied the prepetition relationship and fair contemplation tests. In Russell, the plaintiffs alleged that the debtor sold them certain real property for $715,000 and filed a Chapter 7 bankruptcy 12 days later. The buyers were never listed as creditors because there was no apparent basis for a claim.
Several years later, a plumbing break disclosed that the property had suffered from soil subsidence problems which, according to plaintiffs, were known to the debtors at the time of the sale and not disclosed to the plaintiffs. The plaintiffs sued in state court. The matter was brought back to the bankruptcy court by the debtors' motion to reopen the case to amend the creditor schedules by adding the damage claim and thereby discharge the debt. The plaintiffs in response asserted that theirs was a postpetition claim.
The Russell court discussed various aspects of the problem, including the applicability of the prepetition relationship test and Jensen. The court first determined that "if the claimant has knowledge (even imputed knowledge) of the existence of the risk or threat of contamination at a particular site, then the claim arose by that point in time for purposes of the Bankruptcy Code." Id. at 571. If the claimants, as those in Russell, did not have knowledge, then the court next examined the claimants' relationship to the debtor's prepetition act or omission based on factors enumerated in Piper to determine if the plaintiffs could have fairly contemplated the claim. The court concluded that the plaintiffs had a prepetition relationship with the debtor:
After review of the foregoing authorities, and others, this Court concludes that where debtor committed the act or omission complained of prior to filing bankruptcy, and the claimant has a relationship to the act or omission at the time, such as being the patient or a contracting party, the claim arose at that point in time even if there has been no indication or manifestation of the consequences of the act or omission. It is within the fair contemplation of parties entering into a contract that the other party may breach it, or have made misrepresentations to induce the making of the contract. Thus, a contingent claim arises at that point in time, although it may never mature. The policies of the Bankruptcy Code are best served by an inclusive interpretation of "claim", as 11 U.S.C. § 101(5) contemplates. If the breach of contract damages would have been discharged in a no-asset *54 Chapter 7 if scheduled, they are discharged as if they were scheduled. In re Beezley, 994 F.2d 1433, 1436-37 (9th Cir. 1993). If they are nondischargeable under 11 U.S.C. § 523(a), the creditor should have the opportunity to establish that fact, whether in bankruptcy court or elsewhere. Id.

Russell, 193 B.R. at 571.
The court then gave the debtor 30 days to add the creditor to an amended creditor's schedule, and the plaintiffs 60 days to file a nondischargeability complaint. See In re Russell, 203 B.R. 303 (Bankr.S.D.Cal.1996) (subsequently determining debt to be nondischargeable).
Notice and due process are the fundamental issues affecting the bankruptcy court's ability to discharge future claims of unknown claimants to whom a debtor owes a duty of care based on prepetition conduct. An action for negligent construction may be brought by a downstream purchaser. See Sabella v. Wisler, 59 Cal.2d 21, 27 Cal.Rptr. 689, 693, 377 P.2d 889 (1963) (contractor held liable to prospective home buyers for damages caused by negligent construction). In addition, state law allows an action to accrue upon discovery of the defect. Nevertheless, the discovery doctrine applied to negligent construction actions implicitly recognizes that the claim's origin was at the time of the wrongful conduct. Unlike the undisclosed subsidence problems in Russell, here, it was Debtors' alleged negligent conduct which formed the basis of the contingent claim. The fact that the consequences of the wrongful conduct materialized at a later date does not metamorphose the pre-existing wrongful conduct into future conduct, thereby endowing the results of the wrongful conduct with an independent and unconnected quality. Moreover, the bank in this case was not a classic future claimant.[10]
There is a policy in bankruptcy to deal with any and all claims in the bankruptcy proceeding and to give the debtor a fresh start. Even California imposes a 10-year statute of repose from the completion of construction, in contrast to the indefinite liability exposure under the environmental laws at issue in Jensen, or product liability in Piper. Such policy considerations to end litigation against the negligent builder are even more acute in a no-asset case such as this one, where the banka scheduled creditorsuffered no loss in terms of having access to the estate assets. The bank has not identified any countervailing policy calling for a departure from the conduct test implied from the Code's fresh start policy. On these facts, the determination of when the claim arose under federal law need not be analyzed any further than when the alleged negligent conduct occurred, for a contingent claim arose at that time.[11]

*55 CONCLUSION
It was undisputed that Debtors' conduct, which allegedly created a construction defect and damaged the property, occurred prepetition. As a matter of law, the bank's negligent construction claim was a prepetition contingent claim which was discharged in Debtors' bankruptcy. Summary judgment in favor of the bank was erroneously granted, and the bankruptcy court's April 18, 1996, order is hereby REVERSED.
NOTES
[1] Honorable Philip H. Brandt, Bankruptcy Judge for the Western District of Washington, sitting by designation.
[2] References to "Chapter," "Section," or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330; references to "Fed.R. Bankr.P." are to the Federal Rules of Bankruptcy Procedure XXXX-XXXX, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").
[3] The complaint also alleged that Debtors filed a false financial statement in connection with the loan. The bankruptcy court subsequently determined that this action, as well as any breach of contract action, was discharged, and its conclusion was not appealed.
[4] Although Debtors are the plaintiffs in the adversary proceeding for discharge injunction sanctions, the bank contends that its claim was unaffected by the discharge. In this sense, the bank is the complaining party. The characterization of the claim is the relevant issue. Therefore, the proceeding can be viewed as either an objection to discharge or as an objection to a claim, placing the burden of proof upon the bank which is asserting the claim as nondischargeable. See In re Waterman Steamship Corp., 200 B.R. 770, 774-775 (Bankr.S.D.N.Y.1996); Fed. R.Bankr.P. 4005 (burden of proving claim is on claimant).
[5] California law provides three statutes of limitations for a negligent construction action. A contract claim based on a written agreement is governed by a four-year statute of limitations. Cal. Civ.Proc.Code § 337 (West 1982). The claim accrues when the plaintiff discovers, or could have discovered through reasonable diligence, the injury and its cause. Angeles Chemical, 51 Cal.Rptr.2d at 597. A negligence claim involving damage to real property is governed by a three-year statute of limitations, Cal.Civ.Proc.Code § 338 (West 1982 & Supp.1996), which commences to run when the plaintiff knows, or should have known, of the wrongful conduct at issue. Thus, both of these statutes are subject to the discovery rule. Id. The third statute of limitations provides that where a plaintiff seeks to recover for damage to real property caused by a latent defect in the construction of an improvement to the property, no action may be brought more than 10 years after the substantial completion of the improvement. Cal.Civ.Proc.Code § 337.15 (West 1982). Thus, when a defect is latent, or not apparent from a reasonable inspection, §§ 337 and 338 begin to run only after the damage is sufficiently appreciable to give a reasonable person notice that he has a duty to pursue his remedies; and section 337.15 imposes an absolute 10-year bar. Id. at 597-98.

Although the bankruptcy court did not make findings concerning the nature of the defects or when the bank discovered or should have discovered them, those factual issues need not be reached to dispose of this appeal on the basis of federal law.
[6] Edge is alternately cited as a conduct or "prepetition relationship" case. The BAP in Jensen found Edge persuasive and its holding consistent with the conduct test. Jensen, 127 B.R. at 32. Edge was cited by the Ninth Circuit Jensen case as an example of the prepetition relationship test. In Edge, the bankruptcy court held that the tort creditor's claim arose at the earliest point in the relationship between the victim and the wrongdoer when the dentist performed the negligent act. Edge, 60 B.R. at 699.
[7] Jensen demonstrates the special needs of environmental cases, where the obligation "may consist of a monetary penalty, an obligation to clean up the contamination, an obligation to refrain from polluting in the future or any combination of the three." JOHN W. AMES, RICHARDO I. KILPATRICK, THOMAS J. SALERNO, AND PATRICK CASEY COSTON, Texaco IIRethinking Environmental Claims in Bankruptcy, A New Paradigm for an Old Paradox, 14-SEP.AM. BANKR.INST.J. 8, *8 (1995), hereinafter AMES ET AL., Texaco II.
[8] Lemelle involved a death due to a defective mobile home construction where the injury and manifestation of that injury occurred three years after the manufacturer filed for bankruptcy, and some 15 years after the design and manufacture of the home. Citing Piper, the Fifth Circuit noted that the record was "devoid of any evidence of any pre-petition contact, privity, or other relationship between [the debtor], on the one hand, and [the plaintiff] or the decedents, on the other." It held that the absence of this evidence precluded a finding by the district court that the plaintiff's claims were discharged in the bankruptcy proceedings. Lemelle, 18 F.3d at 1277.

Piper was also followed by an Ohio bankruptcy case where a tort creditor was injured more than a year after the debtor company which manufactured the defective equipment filed for bankruptcy. See In re Correct Mfg. Corp., 167 B.R. 458 (Bankr.S.D.Ohio 1994). The debtor argued that the claim arose at the time of manufacture. The court adopted the Piper test and held that there was no claim because the creditor had no prepetition relationship with the debtor and evidence of such a relationship was a threshold requirement. Id., 167 B.R. at 459.
[9] A future claim has been defined as "a claim against a debtor for an injury or disease that has not as yet become manifest at the time the debtor has filed for bankruptcy, but is based upon the occurrence, prior to bankruptcy of one or more material events, acts, or failures to act." RALPH R. MABEY & JAMIE ANDRA GAVRIN, Constitutional Limitations on the Discharge of Future Claims in Bankruptcy, 44 S.C. L.REV. 745, 750 (Summer, 1993). Future claims may be contingent claims, but the Code does not so state, and case law is unsettled on that issue. In recent years, bankruptcy courts have struggled to determine if a future claim is a claim within the Code's definition, or disregarding that determination, whether or not the future claim can be treated as a claim, nevertheless. The courts seek to balance the competing interests of the debtor's fresh start with the creditor's right to compensation. Largely, the issue of adequate notice to inform and bind the future claimant and notions of fundamental fairness determine the outcome. See Kewanee Boiler, 198 B.R. at 529-31, 537-38; In re Fairchild Aircraft Corp., 184 B.R. 910, 921-25 (Bankr.W.D.Tex.1995) (bankruptcy claims are whatever claims are "possible" to be handled fairly in the bankruptcy process).

For example, future claims of victims of mass torts have been included in a Chapter 11 reorganization plans. In re Johns-Manville Corp., 68 B.R. 618, 628-29 (Bankr.S.D.N.Y.1986) (plan provided for trusts out of which all present and future asbestos-related claims would be paid), aff'd in part, rev'd in part on other grounds, 78 B.R. 407 (S.D.N.Y.1987), aff'd sub nom. Kane v. Johns-Manville Corp., 843 F.2d 636 (2nd Cir. 1988); In re A.H. Robins Co., Inc., 88 B.R. 742, 743 (E.D.Va.1988) (providing trust to deal with Dalkon Shield future claimants and treating their claims as present claims), aff'd, 880 F.2d 694 (4th Cir.), cert. denied sub nom. Menard-Sanford v. A.H. Robins Co., Inc., 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). But see Piper Aircraft, 162 B.R. at 627 (holding that future claimants not yet exposed to or injured by defective aircraft were not identifiable and did not have sufficient relationship with the debtor to have claims cognizable in the bankruptcy proceeding). Environmental obligations raise the same underlying problem of whether the recompense for future claims is subject to the bankruptcy process.
[10] It is well to note that in Johns-Manville and A.H. Robins, the mass tort cases which applied the conduct approach, the bankruptcy courts established trust funds to deal with all present and future claimants who had been exposed to the products:

The court held that the obligations to the future claimants did not rise to the level of "claims." However, they were entitled to representation in the bankruptcy due to the fact that although the injury occurred pre-petition, the actual manifestation of the injury had not yet occurred. By setting up a fund to deal with both present and future claimants, two fundamental precepts of the Bankruptcy Code were satisfied: Similar creditors were treated in a similar manner; and the debtor was able to capture and treat within the plan all prepetition liabilities and obtain the coveted "fresh start." In addition, the future claimants were enjoined from suing the debtor postpetition, and, therefore, were forced to seek recovery through the bankruptcy process. Otherwise, the prospect of frequent and crippling litigation would hamstring the debtor's post-bankruptcy "fresh start."
AMES ET AL., Texaco II, supra. at *8 (footnote omitted).
[11] The benefit of looking at it this way is that one does not have to consider what might or might not have been within the parties' fair contemplation. See Russell, 193 B.R. at 571. Russell's broad interpretation of a contractual relationship potentially encompasses any possibility including breach, whereas, generally, contracts are written not to be breached but to memorialize an agreement.

Nevertheless, it has been held that the classic conduct cases "presume some prepetition relationship between the debtor's conduct and the claimant." Piper Aircraft, 58 F.3d at 1577 (citing A.H. Robins, 839 F.2d at 203 and In re Waterman Steamship Corp., 141 B.R. 552, 556 (Bankr. S.D.N.Y.1992), vacated on other grounds, 157 B.R. 220 (S.D.N.Y.1993)). It would not be inequitable to apply the conduct test to these facts. The bank was a scheduled creditor based on the loan debt in connection with the subject real property. Lenders should fairly contemplate the possibility of negligent construction. They have the opportunity to protect against that risk through their inspections which are, presumably, intended to assure the collateral's fair market value and their loan-to-value ratios. At a foreclosure or bankruptcy trustee's sale, what you see is what you get. With the least bit of diligence, even a third party purchaser would know that the defaulting owner was also the builder. The purchaser gets no general warranty of title from the trustee or sheriff, and should not expect a construction warranty from the foreclosed-out owner. That is why, at least in part, foreclosure sales seldom bring fair market value. The purchaser, whether the lender or not, knows that the property is financially troubled, and ought to have constructive notice that there might be defects.