In re Glenn STOREK, Debtor(s).

No. 91–10189.

United States Bankruptcy Court, N.D. California.

Nov. 27, 2006.

David N. Kuhn, Law Offices of David N. Kuhn, Piedmont, CA, Steven M. Olson, Law Offices of Steven M. Olson, Santa Rosa, CA, for Debtors.

Aron M. Oliner, Law Offices of Duane Morris, Jeffrey J. Goodrich, Shartsis, Friese and Ginsburg, San Francisco, CA, for Trustee.

Memorandum re Violation of
Discharge Injunction

ALAN JAROSLOVSKY, Bankruptcy Judge.

## I. Background and Facts

The roots of the current dispute between debtor Glenn Storek and his brothers, Richard and Craig Storek, and their 92-year-old mother, Lorraine Storek, stretch back for decades to 1969, when Glenn purchased a one-half interest in the Storek Building, a three-story building in San Francisco which has been owned by the Storek family since 1924. The other half of the building was owned first by Glenn's father and, after his death, two family trusts. From 1978 to 2005, Lorraine was the trustee of both trusts.

In 1976, S & S Environmental, one of several Storek family enterprises, borrowed $186,364.00 from the Storek Building Fund, which was controlled by Glenn and his father. In 1986, Glenn borrowed $595,000.00 from Embarcadero Mortgage Company using the Storek Building as collateral. The rest of the Storek family has turned on Glenn based primarily on these two loans taken out and repaid decades ago.

In 2005, Craig and Richard took over as trustees of one of the trusts. They purport to have discovered "malfeasance and wrongdoing" by Glenn back in the day. On August 17, 2005, the filed a state court action against Glenn. Litigating this family feud, which smacks of posturing in order to be better positioned for inheritance when the family matriarch dies, would be the province of the state courts except that Glenn had filed a Chapter 11 bankruptcy petition in early 1991 and the case had been converted to Chapter 7 later that year. Storek was duly discharged on January 24, 1992. The court has reopened the bankruptcy case at Glenn's request be-

cause he alleges the state court action violates his discharge. That is the issue the court must now decide.

The 1986 loan which Glenn and Lorraine had taken out from Embarcadero Mortgage in order to assist family businesses caused significant dissent among the family members.[1] Its interest rate was between 14% and 20%, and evidently Glenn and Lorraine struggled to pay it back. After several family meetings, some fractious, the building was refinanced through Home Savings and Loan and the Embarcadero loan paid off in 1988. Shortly thereafter, Lorraine took over sole management of the Storek Building. All of the business records were transferred to the Storek Building, where they have been accessible to all family members. At the time Glenn filed his bankruptcy in 1991, he had not controlled the building fund for well over two years.

All of the family members were fully aware of Glenn's bankruptcy. Lorraine had even filed a proof of claim for $225,000.00 on behalf of one of the family trusts, alleging that Glenn had not made his half of the payments on the Home Savings loan and that "[a]ll of the loan proceeds were used by [Glenn] for his real estate ventures."

## II. Issues

The primary issue before the court is whether the 2005 state court action, which is entirely based on actions alleged to have taken place years before the 1991 bankruptcy, is barred by Glenn's bankruptcy discharge. Two secondary issues are whether Glenn engaged in any sort of concealment of his acts and whether Glenn is estopped from asserting his discharge rights because he did not seek to reopen the bankruptcy until about ten months after he was served with the state court action.

## III. Active Concealment

Whether Glenn did anything wrong twenty or thirty years ago is not before the court. The issue is rather whether his brothers and mother had enough of an inkling of the claims they are now attempting to assert that the claims were fairly discharged fifteen years ago. Glenn's brothers and mother allege that he has actively concealed his wrongdoing for decades. The court finds no evidence to support this charge. Since 1989, all of the records relating to that period have been in the Storek Building and accessible to all family members.

## IV. Estoppel

■ While Glenn did delay for several months before re-opening his bankruptcy and formally asserting his discharge rights, the court finds no basis for the argument that he has forfeited those rights through delay. The court accepts as plausible Glenn's argument that he and his counsel were not fully aware that all of the claims in the lawsuit related to prepetition acts until discovery had been conducted. While Glenn's delay may be a factor in determining his damages, it is not sufficient enough for the court to hold that he has forfeited his right to assert his discharge.

---

1. The Storek family was involved in several business ventures together, one of them, Storek & Storek / Environmental Center, was a general partnership with Glenn, Richard and their father as general partners and Craig as a limited partner. This was the family entity which made the 1976 loan from the Building Fund. This venture failed and filed its own bankruptcy in late 1990. It is clear that during the time Glenn supposedly cheated his mother all of the family was involved in family business affairs and there were well-known financial problems.

V. Effect of the Discharge

The essential issue in this case is when the claims asserted against Glenn in the 2005 state court lawsuit arose. While not stating so in as many words, the plaintiffs in that case hope that the court will apply the "accrual test," which provides that a claim arises when a cause of action accrues under state law. The plaintiffs believe that their claims did not accrue until they "discovered" them in 2005. However, the Ninth Circuit and most other federal courts have rejected the accrual test because it defines a claim more narrowly than intended by Congress. *In re Cool Fuel, Inc.*, 210 F.3d 999, 1006 (9th Cir.2000); *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1028–29 (4th Cir.1995); *In re Hassanally*, 208 B.R. 46, 51 (9th Cir. BAP1997); *Gottlieb v. Kest*, 141 Cal. App.4th 110, 134, 46 Cal.Rptr.3d 7 (2006).

The state court case of *Gottlieb v. Kest*, supra, probably has the clearest discussion of when a claim arises for discharge purposes under bankruptcy law. In addition to the rejected accrual test, the court there described three other tests the federal courts have employed:

> Second, under the "conduct" test, a claim arises when the wrongful conduct occurs even if the resulting injury has not yet become manifest. (*In re Hassanally*, supra, 208 B.R. at 51; *In re Parks* (Bankr.E.D.Mich.2002) 281 B.R. 899, 902.) The conduct test has been criticized for defining claims too broadly. (*Epstein v. Official Comm. of Unsecured Creditors* (11th Cir.1995) 58 F.3d 1573, 1576–1577.) "[M]any courts have taken the view that the conduct test may be overly broad, tending to include the claims of parties such as classes of future mass tort claimants who cannot know prepetition that they may have a claim in the future." (*In re Agway, Inc.* (Bankr.N.D.N.Y.2004) 313 B.R. 31, 42.)

> Third, the "relationship" test, which often governs claims against a manufacturer of defective products, focuses on the wrongdoer's prepetition conduct and the creation of a relationship, such as contact, exposure, impact, or privity, between the wrongdoer and the claimant. (See *In re Hassanally*, supra, 208 B.R. at p. 52.) A claim arises for purposes of the bankruptcy estate if, no later than the confirmation of a reorganization plan, a relationship exists between an identifiable claimant or group of claimants and the wrongdoer's prepetition conduct. (*Ibid.; Epstein v. Official Comm. of Unsecured Creditors*, supra, 58 F.3d at p. 1577.)

> Fourth, under the "fair contemplation" test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under state or other nonbankruptcy law. (See *In re Cool Fuel, Inc.*, supra, 210 F.3d at pp. 1006–1007; *In re Hexcel Corp.* (N.D.Cal. 1999) 239 B.R. 564, 567–570; *Signature Combs, Inc. v. U.S.* (W.D.Tenn.2003) 253 F.Supp.2d 1028, 1037–1039.) This test originated in environmental cleanup cases. (See *In re Hexcel Corp.*, supra, at 569.)

Neither side has cited any case applying any of the tests to the sort of claims alleged by the plaintiffs in their state court lawsuit. However, if the court employs any test other than the accrual test, judgment must be rendered in favor of Glenn.

The court is drawn back again and again to the phrase of Lorraine's 1992 proof of claim recited above in relation to the Home Savings refinancing loan: "All of the loan proceeds were used by [Glenn] for his real estate ventures." Regardless of whether or not the statement is true, it is what Lorraine believed in 1992. Yet her

2005 lawsuit contains the following allegation, which is at the crux of her claims:

> 10. Defendant Glenn Storek then deposited these funds directly into an account in his name only and under his control exclusively. He then used these funds for his own purposes, sending amounts to entities under his control and commingling them with his own funds and using them for his personal uses.

If Lorraine knew, or at least thought, that Glenn had encumbered jointly owned property and kept all the proceeds for himself, it was incumbent upon her to examine him, investigate, and object to discharge of her claims within the time allowed by the Bankruptcy Code. The allegations against Glenn now are essentially the same as known in 1992. Moreover, once Lorraine and her other sons had an inkling, true or not, that Glenn had used more than his share of Storek Building funds, they should have investigated all of his past conduct. They were not at liberty to deny Glenn his fresh start by waiting 15 years to pursue him.

Citing *In re Jensen*, 995 F.2d 925 (9th Cir.1993), Lorraine, Richard and Craig argue that their claims against Glenn were not "fairly contemplated" at the time of Glenn's bankruptcy. While the "fair contemplation test," created in environmental cases, may not be the best test to apply to this case, even under that test the claims in the 2005 lawsuit are barred by the 1992 bankruptcy discharge. Once they suspected any misuse of Storek Building funds, they should have obtained an accounting of

**2.** See Bartell, "Due Process for the Unknown Future Claim in Bankruptcy–Is This Notice Really Necessary?", 78 Am.Bankr.L.J. 339, 344n18 (2004); *In re Parker*, 264 B.R. 685, 697 n. 12 (10th Cir.BAP 2001). Whether this morphs into the "relationship" test is largely a matter of semantics. Whatever the test is called, the court believes that a prepetition

all such funds. Any reasonable person, believing that some funds were misused, should fairly contemplate that there might be more misused funds.

■ Of the four tests, the court believes that the best one to apply in cases such as this is the "conduct" test, with a "plus."[2] That is, the debt should be considered prepetition if the conduct was prepetition, as long as there was enough information available to the claimant to raise some kind of suspicion and as long as the true facts were then capable of being discovered. In this case, the conduct occurred years before the bankruptcy. Lorraine clearly believed that Glenn had used all of the proceeds of the Home Savings refinancing for his personal purposes, rather than the one-half he was entitled to use. That is the crux of the 2005 lawsuit. Enough was known of Glenn's conduct at the time of the bankruptcy to subject any claims based on his prepetition conduct to his discharge.

## VI. Conclusion

■ By any test other that the discredited accrual test, the claims asserted by Lorraine, Craig and Richard in their 2005 state court action were discharged in 1992. Their attempt to revive them 15 years after the bankruptcy and up to thirty years after the fact violated the discharge injunction provided by § 524(a)(2) of the Bankruptcy Code in Glenn's bankruptcy. Accordingly, the court will issue an order providing as follows:

> relationship, prepetition conduct, and an inkling or suspicion of a claim is enough to make the claim subject to the bankruptcy discharge. It may be that the relationship alone is enough to make the debt subject to the discharge, but there is much more in this case.

1. Lorraine, Richard and Craig and their lawyers will be permanently enjoined from prosecuting their state court action against Glenn.

2. Lorraine, Richard and Craig shall reimburse Glenn for all of his reasonable attorneys' fees and costs incurred in the first 90 days of the state court action and all of the proceedings in this court. Glenn shall file and serve a motion to fix the amount of these fees and costs. Lorraine, Richard and Craig shall be jointly and severally liable for these fees and costs.

Counsel for Glenn shall submit an appropriate form of order.