In re HEXCEL CORPORATION, Debtor.

Hexcel Corporation, Plaintiff, Appellant,

v.

Stepan Company, Defendant, Appellee.

No. C 99–2838 CRB.

United States District Court, N.D. California.

Aug. 19, 1999.

Katherine D. Ray, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for plaintiff.

Shelly Rothschild, Whitman, Breed, Abbott & Morgan, Los Angeles, CA, for defendant.

### ORDER

BREYER, District Judge.

The issue presented on this appeal is whether the bankruptcy court applied the correct legal standard when it used the "fair contemplation" test set forth in *In re Jensen*, 995 F.2d 925 (9th Cir.1993) (per curiam), to determine whether Stepan's third-party contribution claim against Hexcel was discharged in a prior bankruptcy proceeding. For the reasons set forth below, the ruling of the bankruptcy court is affirmed.

### I.

On December 6, 1993, Hexcel Corporation, plaintiff and appellant in this action, petitioned for bankruptcy. On January 12, 1995, the plan of reorganization was approved by the bankruptcy court.

On December 9, 1997, a group of New Jersey residents filed a class action lawsuit in New Jersey state court against Stepan Company, defendant and appellee in this action. The complaint alleges that Stepan discharged toxic pollutants in the area, and that the resulting contamination has caused the plaintiffs bodily injury, death, and property damage. The plaintiffs in the class action seek compensatory and punitive damages as relief for their injuries.

On September 11, 1998, Stepan filed a third-party complaint in the New Jersey action against all those who could have contributed to the contamination. Stepan's complaint included Hexcel, because public records indicated that Hexcel had owned and operated a plant in the area that was the subject of a 1986 state cleanup order.

Hexcel sought an injunction in the bankruptcy court to prevent Stepan from pursuing this third-party complaint against it. Hexcel contended that Stepan's claim "arose" prior to Hexcel's bankruptcy petition in 1993, and therefore any debt resulting from this claim was discharged by the reorganization pursuant to 11 U.S.C. § 1141.[1]

The bankruptcy court rejected this argument and denied Hexcel's motion for preliminary injunction, finding that Hexcel had failed to show a likelihood of success on its assertion that Stepan's claim arose prior to the 1993 petition. In making this determination, the court applied the test from the Ninth Circuit case of *In re Jensen*, 995 F.2d 925 (9th Cir.1993), which held that, at least in cases involving the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") or similar state-law statutes, a claim "arises" for bankruptcy purposes when the claimant has a fair basis for

---

1. Section 1141 provides, with limited exceptions not applicable here, that all claims against a debtor in a bankruptcy case that arose before confirmation of the reorganization plan are discharged.

contemplating that it might have a claim against the debtor prior to the discharge. The bankruptcy court found that the mere fact that Hexcel had been the subject of a state cleanup order in 1986 did not give the parties a fair basis for contemplating that Stepan might be sued in mass tort litigation some time in the future, and might have a third-party claim against Hexcel in connection with that litigation. In so holding, the bankruptcy court rejected Hexcel's argument that it should have applied the "debtor's conduct" test, which appears to provide that any claim arising from the debtor's pre-bankruptcy conduct must be discharged, regardless of whether that claim could fairly be contemplated by the parties.

This Court granted Hexcel leave to appeal this ruling pursuant to 28 U.S.C. § 158(a)(3).

## II.

■ The standard for district court review of a ruling by a bankruptcy court is identical to the standard used by circuit courts reviewing district court decisions: clearly erroneous review of factual findings and de novo review of legal conclusions. *See In re Morgan,* 197 B.R. 892, 895 (N.D.Cal.1996); Fed.R.Bankr.P. 8013. As mentioned above, the bankruptcy court opted to apply the fair contemplation test to determine whether Stepan's claim against Hexcel arose pre-petition or post-petition. The court applied this test in Stepan's favor at the preliminary injunction stage, finding that Hexcel had failed to make a sufficient showing that the parties could have contemplated Stepan's future indemnity claim. This preliminary factual finding by the bankruptcy court is not under review in this interlocutory appeal, and the Court assumes its correctness for the purpose of this opinion. Accordingly, the discrete legal question now presented is whether the bankruptcy court applied the proper legal standard when

ruling that a claim that did not become manifest until well after Hexcel's bankruptcy proceedings, and could not have been contemplated by the parties until the 1997 class action lawsuit, was not discharged by Hexcel's 1995 reorganization. After considering the Bankruptcy Code, the relevant case law, and the constitutional questions raised by this appeal, the Court finds that the bankruptcy court properly ruled that the fair contemplation test must be applied.

## III.

■ 11 U.S.C. § 1141 provides, with limited exceptions not applicable here, that all claims against the debtor that "arose" prior to the debtor's bankruptcy proceedings are discharged. This discharge is effective regardless of whether the claimant has accepted the plan or has even filed a claim in the bankruptcy case. 11 U.S.C. § 114(a).[2]

The Code defines a pre-petition claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). Congress indicated that the word "claim" is to be given the "broadest possible definition" to ensure that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R.Rep. No. 95–595 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266. Thus, if Stepan can be deemed to have had a "contingent" claim against Hexcel prior to Hexcel's bankruptcy proceedings, Stepan's present indemnity action against Hexcel must be discharged pursuant to section 1141.

■ However, despite the broad reach of section 101(5), the definition of a "claim" for bankruptcy purposes is not boundless. For example, this section does

---

**2.** However, potential claimants must be given notice that their interests may be affected by the bankruptcy proceeding. *See, e.g.,* 11 U.S.C. §§ 1109(b), 1128(a).

not include future rights to payment that are "unknown" and "unforeseeable." Indeed, the Ninth Circuit has explicitly recognized, albeit in a different context, that the definition of a "contingent" claim under section 101(5) is more limited: "claims are contingent . . . if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor *and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.*" *In re Dill,* 731 F.2d 629, 631 (9th Cir.1984) (quoting *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bankr.S.D.Tex.1980)) (emphasis added). Under this definition, a claim cannot fall within the purview of section 101(5)—and thus cannot be discharged as a pre-petition claim—unless that claim could have been contemplated by the parties prior to the bankruptcy proceedings. Any *future, unknown* claim that could not have been reasonably contemplated does not fall within the purview of section 101(5) and must not be discharged, even if the conduct giving rise to the claim took place before the bankruptcy proceedings.[3]

An examination of the statutory scheme embodied in the Bankruptcy Code further supports this reading of section 101(5). As the courts have recognized, "[n]otice is the cornerstone underpinning Bankruptcy Code procedure." *In re Savage Industries, Inc.,* 43 F.3d 714, 719 (1st Cir.1994). For example, it provides that a bankruptcy trustee must ensure "parties in interest" adequate notice an opportunity to be heard before their interests may be adversely affected. 11 U.S.C. § 363(b). Further, parties that would be bound by a proposed reorganization plan must be given notice of the plan, 11 U.S.C. § 1128(a), and parties in interest are given the "right to be heard" in chapter 11 cases. 11 U.S.C. § 1109(b). It would be incongruent for the Code to provide so extensively for notice to parties affected by the bankruptcy proceedings, yet to define a pre-petition claim under section 101(5) so broadly as to adversely affect the interests of those who could not possibly have notice of their rights and interests.

## IV.

■ Although this distinction between future claims not subject to contemplation by the parties that fall outside the purview of section 101(5) and contingent, foreseeable claims that fall within the Code appears straightforward, the case law has created some confusion regarding the circumstances under which a claim may be discharged. Courts throughout the country have applied a number of different legal tests to conduct this inquiry. However, although these different tests might at first appear to support different outcomes with respect to the case at hand, closer examination reveals that a common thread runs through the large majority of these cases: the claim of a creditor which stems from the pre-petition conduct of the debtor should not be discharged if the parties could not reasonably contemplate the potential existence of the future claim prior to the reorganization.

For example, one test that courts have used in evaluating the dischargeability of future claims is the "relationship" or "*Piper*" test, which requires either a pre-petition or pre-confirmation relationship, "such as contact, exposure, impact, or privity, between the debtor's pre-petition conduct and the claimant." *Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp. ("In re Piper"),* 58 F.3d 1573, 1577 (11th Cir.1995).

---

**3.** This position is further supported by the Ninth Circuit decision of *In re Jensen,* relied on by the bankruptcy court in this case. In *Jensen,* the court stated that "nothing in the legislative history or the Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights existed." 995 F.2d at 930 (citation omitted).

In *Piper,* an aircraft manufacturer filed a petition for bankruptcy. The court held that possible future holders of product liability claims—i.e., individuals who might some day be injured or killed in an airplane accident—did *not* hold pre-petition claims within the meaning of section 101(5) if they had not had any contact with Piper prior to the bankruptcy. As the Court stated, "[t]he debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct." *Id.*

This test appears to incorporate, at least implicitly, the notion that a future claim must be within the reasonable contemplation of the parties. If a relationship exists between the pre-petition conduct of the debtor and an *identifiable* potential claimant, it typically follows that the parties can fairly contemplate the *possible* existence of a claim against the debtor. This proposition was made explicit in *In re Russell,* 193 B.R. 568, 571–72 (Bankr.S.D.Cal.1996), in which the court stated: "where the claimants had a pre-petition relationship to the debtor and the circumstance which gives rise to their claim, *it is within the fair contemplation of the parties that a contingent claim exists at that point in time.*" (emphasis added).[4]

A second method for determining whether a claim arose pre-petition or post-petition is the test urged by Hexcel here—the debtor's conduct test. This test provides that a claim, for bankruptcy purposes, arises upon the occurrence of the debtor's conduct that ultimately gave rise to the subsequent cause of action. For example, this test was applied in the asbestos liability case of *In re Johns–Manville*

*Corp.,* 57 B.R. 680, 690 (Bankr.S.D.N.Y. 1986), where the court held that plaintiffs' claims "arose" at the time of asbestos exposure, and not the manifestation of their injuries. And, in *Grady v. A.H. Robins Co.,* 839 F.2d 198, 203 (4th Cir.1988), a plaintiff who sued the debtor post-petition for an injury arising from the pre-petition insertion of an intrauterine contraceptive device was denied relief on the grounds that her claim arose, for bankruptcy purposes, when the device was inserted into her body, not when her legal claim actually accrued.

The debtor's conduct test would appear to allow for the possibility that a creditor's claim is automatically discharged if the conduct giving rise to the claim occurred pre-petition, *even if the creditor had no way of knowing of the claim at the time.* However, even in these cases, courts applying the debtor's conduct test left room for protection of individuals with future, unknown claims. In both cases, the debtors were well aware of the damage their products had caused by the time of the bankruptcy proceeding; thus, the debtors and the bankruptcy courts anticipated that future claims would arise from unknown individuals who had been exposed to the harmful product, but who would not become aware of their claims until after the reorganization. Accordingly, trust funds were created during reorganization in order to compensate these prospective injuries, and representatives were appointed to articulate the interests of the future claimants during the proceedings. *See In re A.H. Robins,* 88 B.R. 742, 743 (E.D.Va. 1988), *aff'd* 880 F.2d 694 (4th Cir.1989); *In re Johns–Manville Corp.,* 36 B.R. 743, 745–46 (Bankr.S.D.N.Y.1984). In applying

---

4. To the extent that the relationship test might be defined so broadly as to include future claims that cannot be contemplated, the Ninth Circuit has criticized it: "The relationship approach, when defined ... broadly, undermines the rationale for considering whether or not a relationship exists," namely, "that a creditor with a relationship *may anticipate its potential claim." Jensen,* 995 F.2d at 930

(emphasis added). This important caveat precludes the legally unsupportable and patently unfair result reached in *In re Edge,* 60 B.R. 690, 705 (Bankr.M.D.Tenn.1986), where the claim of a victim of a bankrupt dentist's pre-petition malpractice was discharged, notwithstanding the fact that the injury was not discoverable until after the completion of the bankruptcy.

the debtor's conduct test to determine that plaintiffs' claims were discharged in bankruptcy, the respective courts were not holding that the plaintiffs would be prevented from recovering *at all*. Rather, the claimants' interests had already been represented in the bankruptcy proceedings through the creation of the trust funds and the appointment of class representatives. Had this not been the case, it is doubtful that plaintiffs' claims could properly be deemed to have been discharged in bankruptcy.

The Ninth Circuit bankruptcy appellate panel has also recently applied the debtor's conduct test, holding that a lender bank's claim for negligent construction was a contingent claim falling within the scope of section 101(5) since the defective construction occurred pre-petition, even though the bank did not discover the defect until after the debtor's bankruptcy proceedings had been completed. *In re Hassanally*, 208 B.R. 46, 51 (9th Cir. BAP 1997). In so holding, however, the court again lent support to the notion that the concept of "fair contemplation" is always implicit in the question whether a cause of action may be discharged as a pre-petition claim:

> It would not be inequitable to apply the conduct test to these facts.... *Lenders should fairly contemplate the possibility of negligent construction.* They have the opportunity to protect against that risk through their inspections ... and ought to have constructive notice that there might be defects.

*Id.* at 54 n. 11 (emphasis added).

Finally, the Ninth Circuit in *Jensen* adopted the "fair contemplation" test, at least in the context of claims brought pursuant to CERCLA or similar state statutes.[5] In *Jensen*, the State of California brought a claim against the bankrupt debtor for hazardous waste cleanup costs pursuant to a state statute similar to CERCLA.[6] Although the state incurred the costs of the cleanup after the debtor's bankruptcy proceedings, the conduct that caused the harm occurred pre-petition. *Id.* at 926–27. The Bankruptcy Appellate Panel ("BAP") ruled that the state's claim against the debtor arose pre-petition and had therefore been discharged in bankruptcy, on the grounds that "claims in bankruptcy arise based upon the debtor's conduct." *Id.* at 927.

The Ninth Circuit rejected the BAP's application of the debtor's conduct test, ruling instead that, at least in the CERCLA context, a claim may only be deemed to have arisen pre-petition if it is "based upon pre-petition conduct that can fairly be contemplated by the parties at the time of the debtors' bankruptcy." *Id.* at 930 (quoting *In re Nat'l Gypsum Co.*, 139 B.R. 397, 404 (N.D.Tex.1992)). The Court suggested that the application of this test, which is less protective of the debtor, on its face, than the test applied by the BAP, was dictated by the unique intersection of environmental cleanup law and federal bankruptcy statutes. On the one hand, the Court pointed out, the Bankruptcy Reform Act of 1978 was designed to provide debtors with a "fresh start" by discharging as many claims against them as possible. *Id.* at 928. On the other hand, CERCLA embodies a strict Congressional mandate "to protect public health and the environment by facilitating the cleanup of environmental contamination and imposing costs

---

5. Actually, a fourth major test used by the courts to determine whether a claim arises pre-petition or post-petition is the "state-law accrual" test articulated by the Third Circuit in *In re M. Frenville Co., Inc.*, 744 F.2d 332 (3rd Cir.1984), which provides that a claim only "arises" once the claimant has the right to obtain payment. This test, of course, automatically ensures that a creditor's claim will not be discharged if the claim could not be

contemplated. However, the Ninth Circuit has rejected the *Frenville* test as "ignor[ing] the breath of the statutory definition of 'claim.'" *Jensen*, 995 F.2d at 929.

6. For the purpose of simplicity, the Court shall hereinafter follow the *Jensen* court's lead and refer to the state's claim in *Jensen* as a "CERCLA claim."

on the parties responsible for the pollution." *Id.* at 927 (citations omitted). In light of the competing public policy concerns expressed by Congress, the Court stated, it would be inappropriate to bar a CERCLA claimant from recovery if the claimant could not reasonably contemplate, prior to the bankruptcy proceedings, that it might have a cause of action against the debtor. *Id.* at 930.[7]

By holding that the fair contemplation test must be applied in the CERCLA context, it appears that the *Jensen* court was implying that the debtor's conduct test should be applied under most other circumstances.[8] Hexcel seizes upon this apparent implication by arguing that outside the CERCLA context, the debtor's conduct test must be applied, and claims stemming from pre-petition conduct must be discharged, *even* if this would result in the discharge of a claim that the parties would had no way of contemplating prior to the bankruptcy. However, nothing in the *Jensen* decision supports this extreme conclusion. In fact, as mentioned above, the court explicitly stated that "nothing in the legislative history or the Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights exist-

ed." *Jensen,* 995 F.2d at 930 (citation omitted).[9]

■ Therefore, although it is generally true that "claims in bankruptcy arise from the debtor's conduct," *Zelis,* 66 F.3d at 209, the common thread running through the case law is that the Code does not suggest that a creditor's claim is to be discharged if the parties could not reasonably contemplate the existence of that claim prior to the reorganization.

Accordingly, it would have been error for the bankruptcy court to discharge Stepan's indemnity claim against Hexcel without first determining that the parties could fairly contemplate the claim prior to the termination of the bankruptcy proceedings.

### V.

This conclusion is further supported by the potential constitutional problems that could arise if the Court were to interpret the Bankruptcy Code in a manner that required the discharge of Stepan's claim. It is possible that such an interpretation could deprive Stepan of a property interest (its state law tort claim against Hexcel) without adequate notice in violation of the

---

7. The Court then went on to affirm the BAP's ruling that the claim was discharged, on the grounds that the state could have fairly contemplated, prior to the reorganization, that it may have had a claim against the debtor. *See id.* at 931.

8. Indeed, courts in this jurisdiction have applied this test in a number of post-*Jensen* cases. *See, e.g., In re Hassanally, supra; In re Zelis,* 66 F.3d 205, 209 (9th Cir.1995). However, different tests have also been applied. *See, e.g., In re Russell,* 193 B.R. 568 (Bankr. S.D.Cal.1996).

9. Stepan nonetheless anticipates Hexcel's argument in this regard, responding that even if the debtor's conduct test must be applied to unknown future claims outside the context of *Jensen,* this case is sufficiently comparable to *Jensen* to warrant the application of the fair contemplation test. Stepan's argument, simply stated, is that this case also involves the problem of environmental contamination,

thereby invoking competing policy concerns similar to those identified in *Jensen.* There are two flaws in this argument. First, the *Jensen* court was clear that the policy interest it sought to protect was "CERCLA's goal of cleaning up the environment quickly," *Id.* at 930, whereas the New Jersey class action simply entails an effort to seek compensatory and punitive damages pursuant to common law tort claims. Second, and more fundamentally, the *Jensen* court was charged with the peculiar task of reconciling two competing policy objectives explicitly set forth by Congress. *See id.* at 928. Accordingly, the rationale of *Jensen* does not appear to apply in this case. However, as explained herein, the peculiar policy concerns at play in *Jensen* need not be present to justify a holding that future claims that cannot be contemplated by the parties prior to bankruptcy may not be discharged.

Due Process Clause of the Fifth Amendment.[10]

Due process concerns usually arise in the bankruptcy context when the debtor has failed to provide adequate notice to potential creditors that it has filed for bankruptcy. Although the Bankruptcy Code contains numerous provisions requiring such notice—e.g., 11 U.S.C. §§ 1109(b), 1128(a)—these provisions are "founded in fundamental notions of procedural due process." *In re Savage Industries*, 43 F.3d 714, 721 (1st Cir.1994); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 348 (3rd Cir.1995).

Hexcel argues that it addressed these concerns during bankruptcy by publishing notice of the proceedings in the Wall Street Journal so that any potential claimant that Hexcel could not identify would be alerted of the need to assert its interests in the bankruptcy court. Hexcel may be correct that this publication was sufficient to satisfy its notice obligation to creditors *who could contemplate that they might have a claim*. It is difficult to imagine, however, how the announcement of a bankruptcy proceeding published in the Wall Street Journal could possibly satisfy due process concerns for a potential creditor who had no way of knowing that it may have a claim against the debtor some time in the future. *See, e.g., In re Pettibone*, 162 B.R. 791, 808 (Bankr.N.D.Ill.1994) ("The Bankruptcy Code does not require a party ... with no known interest in a bankruptcy proceeding to monitor national financial papers and read notices about businesses against which they have no known claims to guard against the possibility they might later be held on notice of claim bar."). In short, Hexcel confuses the requirement that creditors be given notice of the bankruptcy proceeding (which it satisfied) with the requirement that parties must have some notice of potential claims they might have against the bankruptcy petitioner before those claims are discharged (which could not possibly have been satisfied).

Courts have discussed the due process problems that could arise from the discharge of a creditor's claim before the parties could contemplate that the claim existed. For example, in *In re Kewanee Boiler Corp.*, 198 B.R. 519 (Bankr.N.D.Ill. 1996), plaintiff was injured in a post-petition boiler room accident as a result of alleged defects in a boiler manufactured pre-petition by the bankrupt debtor. The court found, for reasons similar to those expressed in Sections III and IV, *supra*, that even though plaintiff's cause of action stemmed from the debtor's pre-petition conduct, it did not fall within the Code's definition of "claim" and therefore was not discharged in bankruptcy. *Id.* at 528. In addition, the court stated as follows:

> Even if a contingent "claim" could by some stretch of § 101(5) be held by Smith pre-petition, this would raise other serious questions under the Code and Constitution. Such ruling would force Smith to be bound by proceedings in which he did not and could not participate. Fifth Amendment Due Process concerns are clearly at issue in a case like this ...

*Id.* at 528–29. The court went on to point out that although some courts have ruled that this due process concern may be adequately addressed by the establishment of a trust fund for future claimants and the appointment of a representative to articulate the interests of future claimants during the confirmation process, no such mechanism was created in connection with the boiler manufacturer's bankruptcy proceedings. *Id.* at 531. The court concluded that "[p]rocedural due process and requirements of meaningful notice are in-

---

**10.** Again, this analysis assumes the correctness of the bankruptcy court's factual finding that the parties could not fairly contemplate the existence of a future claim by Stepan against Hexcel. The Court expresses no opinion in this regard. Nothing in this decision should influence the bankruptcy court's resolution of this factual question at the permanent injunction stage of the litigation.

deed a limitation on what possible 'claims' may be controlled by a confirmed plan in bankruptcy." *Id.* at 534.

The Second Circuit, in *dicta*, has also recognized the potential due process problems associated with the discharge of future claims that could not be contemplated by the parties pre-petition:

> Defining claims to include any ultimate right to payment arising from pre-petition conduct by the debtor comports with the theoretical model of assuring that all assets of the debtor are available to those seeking recovery for pre-petition conduct. But such an interpretation of "claim" yields questionable results. Consider, for example, a company that builds bridges around the world. It can estimate that of 10,000 bridges it builds, one will fail, causing 10 deaths. Having built 10,000 bridges, it becomes insolvent and files a petition in bankruptcy. Is there a "claim" on behalf of the 10 people who will be killed when they drive across the one bridge that will fail someday in the future? If the only test is whether the ultimate right to payment will arise out of the debtor's pre-petition conduct, the future victims have a [pre-petition] "claim." Yet it must be obvious that enormous practical and perhaps constitutional problems would arise from recognition of such a claim. The potential victims are not only unidentified, but there is no way to identify them. Sheer fortuity will determine who will be on that one bridge when it crashes.

*In re Chateaugay Corp.*, 944 F.2d 997, 1003 (2nd Cir.1991). *See also Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir.1994); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 927 (Bankr.W.D.Tex.1995), *vacated on other grounds by* 220 B.R. 909 (Bankr.W.D.Tex.1998); *In re UNR Industries, Inc.*, 29 B.R. 741, 748 (N.D.Ill.1983).

Here, according to the preliminary factual findings of the bankruptcy court, the parties could not have contemplated the possibility that Stepan might have a right to payment from Hexcel in the future. Neither the New Jersey class plaintiffs nor Stepan knew or should have known of the potential health and property damage allegedly caused by Hexcel. Even Hexcel admits that it could not identify Stepan pre-petition as a future claimant, nor could it conceive of the set of facts that gave rise to Stepan's present indemnity claim. Accordingly, the due process concerns raised by the courts *Kewanee* and *Chateaugay* are equally applicable here. The existence of these concerns bolsters the conclusion that a future claim that cannot be contemplated by the parties is not discharged under the Bankruptcy Code, even if that claim stems from the pre-petition conduct of the debtor.

## VI.

■ This holding is not at odds with the basic notion that a claim in bankruptcy stems from the debtor's conduct. *See In re Zelis*, 66 F.3d 205, 209 (9th Cir.1995). Clearly, the preliminary task for the bankruptcy court is to ask when the conduct giving rise to the claim occurred—the claim may not be discharged if the conduct did not occur pre-petition. The import of this ruling is simply that even if a claim stems from pre-petition conduct, it still may not be discharged if the parties could not fairly contemplate its potential existence during the bankruptcy proceedings. This conclusion is compelled by the Bankruptcy Code and the case law, and is bolstered by the potential constitutional problems that could arise from a contrary result. Accordingly, the decision of the bankruptcy court is AFFIRMED.

**IT IS SO ORDERED.**