[S. F. No. 14619. In Bank.—December 28, 1932.]

COUNTY OF SAN DIEGO (a Body Corporate and Politic), Petitioner, v. ERNEST R. CHILDS, County Surveyor, etc., Respondent; GROSSMONT PARK COMPANY (a Corporation) et al., Interveners.

Thomas Whelan, District Attorney, Frank T. Dunn, Chief Deputy District Attorney, O'Melveny, Tuller & Myers, James L. Beebe and Pierce Works for Petitioner.

William Hamilton, as *Amicus Curiae* on Behalf of Petitioner.

Roscoe R. Hess for Respondent.

Herbert C. Kelly for Interveners.

Marshall Stimson and Noel Edwards, as *Amici Curiae* on Behalf of Interveners.

SHENK, J.—This is an application for a writ of mandate to compel the respondent, as county surveyor of San Diego County, to prepare a diagram and to make the reassessment described in the petition, and in accordance with the Refunding and Reassessment Act approved June 15, 1931. (Stats. 1931, p. 1861.)

Some time prior to October 7, 1929, the board of supervisors instituted proceedings for extensive public improvements in certain unincorporated territory in said county pursuant to the Acquisition and Improvement Act of 1925. (Stats. 1925, p. 849, as amended.) The lands declared to be benefited specifically by the improvement were designated "Improvement Dist. No. 19." Bonds in the sum of $516,631.83 were issued by the board to cover the cost of the improvements. The work was completed and, on November 8, 1929, the bonds were delivered to the contractor in payment of the contract price. These bonds are now owned by Municipal Bond Company. It is conceded by all parties that the proceedings leading up to the issuance and delivery of the bonds were regular and valid in every respect. Thereafter the board of supervisors proceeded to levy the annual assessment to pay interest and principal on said bonds. On the assessment levied in 1930 the sum of $44.82, and no more, was collected. On the 1931 assessment only the sum of $41.60 was collected.

The legislature, at its 1931 session, passed an act to provide for the refunding of indebtedness and the retirement of bonds of districts established under the Acquisition and

Improvement Act of 1925. The refunding statute is framed to apply in the following contingencies: First, where it is accomplished with the consent of all parties concerned, namely, the holders of all outstanding bonds and all of the property owners in the district. Secondly, where twenty per cent or more of the principal or interest payable in any one year remains unpaid for the period of thirty days, because of delinquency on the part of property owners to pay their assessments, the board of supervisors, in its discretion, may declare that public interest, convenience and necessity require that proceedings to refund the outstanding bonds be taken. Thirdly, when fifty per cent or more of the special assessment in any one year is delinquent at least ninety days, the board, likewise in its discretion, may make the declaration and proceed as indicated in the second contingency. Fourthly, when seventy-five per cent or more of the special assessment is unpaid and delinquent for ninety days, the act provides that the board "shall proceed" to refund the outstanding bonds and to levy the reassessment therefor. In all cases the consent of all of the bondholders is required. In no case, except the first, is the consent of the property owners required or provided for. More than ninety per cent of the assessments for the years 1930 and 1931 are delinquent.

In January, 1932, the auditor and the treasurer of said county issued their certificates notifying the board of supervisors of the delinquency; whereupon the board found the same to be true and by resolution declared that "the public interest, convenience and necessity requires the refunding of the unpaid bonds" of said district No. 19, and that it is the intention of said board to refund the same and that a reassessment for said refunding be levied as provided in the act of 1931, the refunding bonds to extend over a period of nineteen years. The owner of the unpaid bonds filed with the board an agreement in writing assenting to the refunding of said bonds. Thereupon the board directed the respondent county surveyor to prepare a diagram of said district and to proceed with the making of the reassessment provided for in the act of 1931. The county surveyor refused to proceed and the present proceeding was commenced to compel him to do so.

The respondent filed a return to the alternative writ, admitting the facts alleged in the petition, but bases his refusal to prepare the diagram and reassessment on the ground that the Refunding Act of 1931 is unconstitutional in numerous respects as applied to owners of property in the district on whose lands the assessment had become established under the act of 1925. Leave to intervene was granted to Grossmont Park Company, a corporation, Morse Construction Company, a corporation, and M. Hall Company, a corporation, and Carl A. G. Fristus. A stipulation of facts in connection with the complaint in intervention has been filed, wherein it is stipulated that the interveners were at all times mentioned in the petition, and now are, the owners in possession and entitled to the possession of a majority both in area and in assessment valuation of the lands included in said district 19, and have an interest in the success of the respondent; that the proposed reassessment will change the entire plan of assessing said lands from the *ad valorem* to a specific assessment plan and will change the time at which the assessments are payable, the penalties in the case of default, the time within which a sale of the property on foreclosure for default may be made, and the amounts to be paid by each parcel of property within the district; that the special assessment taxes for the fiscal year 1930–1931 upon and against most of the lands of interveners were unpaid and that by reason of such delinquencies said lands were declared sold to the state of California by the tax collector of San Diego County in the month of June, 1931, and have not since been redeemed; that none of the interveners, nor any land owners within the district, have joined in or consented to any proceedings whatsoever for the reassessment of land within said district or for the refunding of any bonds issued for improvements in said district.

The principal question presented is the applicability of the 1931 act to the prior and completed proceedings and transactions under the 1925 act. There is much discussion in the briefs with reference to the basis for the declaration of the board that public interest, convenience and necessity require the refunding and reassessment. The petitioner states that there are in the county of San Diego some thirty-three districts on which bonds have been issued under the

provisions of the Acquisition and Improvement Act of 1925; that the principal sum of these bonds totals several million dollars, and a considerable number of said improvement district ventures were speculative; that such speculation has failed, but that the assessments to pay for the improvements go on; that the lands in said districts are also taxed for county and school purposes and to support other public corporations; that the lands in said districts are so overburdened with taxation and assessments that the owners thereof refuse or neglect to pay said assessments and general taxes; that especially the county and school districts are injured by the failure to collect the general taxes; that rates of taxation for general purposes must be increased because no taxes can be expected from said delinquent improvement districts; that owners of property in said districts fail to improve their property because they are hopeless of making a redemption under the heavy penalties provided by the general taxing laws, and the property in said districts is therefore in a "frozen" condition.

The respondent and interveners contend that there is no basis for the conclusion of the board of supervisors that public interest, convenience and necessity require the refunding of said bonds and a reassessment; that the contemplated proceeding is contrary to the interests of the property owners in the district and is in defiance of their constitutional rights and solely in the interest of the bondholders. As we view the problem presented the question whether there is a sufficient basis for the declaration of public interest, convenience and necessity by the board is beside the mark, for the reason that the board is here proceeding under the mandatory provisions of the fourth contingency of the statute above mentioned and the real question presented is whether it is within the constitutional power of the legislature to require or provide for the refunding and reassessment as outlined in the 1931 statute and make the same applicable to valid proceedings under the 1925 act, notwithstanding the latter have long since been completed, assessments been levied thereunder and lands in the district been sold to the state for delinquent assessments, and without the consent and against the protest of the land owners in the district.

■ The Acquisition and Improvement Act of 1925 provides for a determination by the board of supervisors of the extent of the district to be benefited by the proposed improvement and that bonds be issued to the contractor in payment of the contract price. Said bonds are issued by the county, when, as in this case, the district is in unincorporated territory, payable exclusively from the special fund levied and collected upon the lands in the special assessment district. The county is not bound for the payment of the bonds, and the credit of the county is not directly affected by the nonpayment thereof. The obligation of the county is limited to the annual levy of a sufficient special assessment tax to satisfy the payments of principal and interest on said bonds as the same mature. This special assessment tax is levied on the taxable lands in the district "according to their respective valuations in the current assessment for county taxation" and "shall be levied, computed, entered, collected and enforced in the same manner and by the same persons and at the same time and with the same penalties and interest as are other taxes for county purposes . . . and all laws applicable to the levy, collection and enforcement of taxes for county purposes . . . are hereby made applicable to said special assessment tax". (Stats. 1925, p. 890, sec. 41.) Under this plan the bonds are not a specific lien upon the lots and parcels of land in the district. The bondholder must look for payment from the special fund maintained by the annual assessments. If the fund becomes depleted and is insufficient to pay the interest or principal on the bonds it is the duty of the board of supervisors to provide for the deficiency in the subsequent levy. If the assessment becomes delinquent the land assessed is sold to the state as in the case of general taxes. The property owner has five years within which to redeem and his total obligation is met by the payment of the redemption money. If redemption be not made the property is finally sold in the manner and form provided for the sale of property for nonpayment of county taxes. The bondholder acquires his bond in the light of these statutory provisions.

■ The plan of the refunding act of 1931 contemplates the cancellation of the special assessment *ad valorem* tax under the 1925 act and the imposition of a special assess-

ment tax lien on each and every parcel of land in the district, substantially as provided in the Improvement Act of 1911 (Stats. 1911, p. 730). The amount of the specific assessment is to be determined by the board of supervisors after the notice provided for in the act. Under this plan the future assessed valuation of land within the district ceased to be determinative of the proportion of the annual payments to be made by the individual land owners, as provided for in the 1925 act. Under the new act the valuation of said lands, as shown by the last equalized assessment-roll of the county, fixes for all time the proportionate amount of the bond obligation allocated to each lot or parcel of land in the district. This proportionate part of the total indebtedness of the district thus becomes a specific lien on each parcel of land in the district. A new bond is then to be issued to represent the amount of this lien. In computing the amount to be covered by the reassessment and the issue of new bonds there shall be included the total amount of the principal of the bonds issued on the original proceedings with interest thereon as provided for in the bonds, the estimated expenses of the reassessment and refunding proceedings which shall include the expense of making the reassessment and of issuing the refunding bonds. Credit is allowed on each assessment to the extent of prior payment on the *ad valorem* basis. Upon delinquency in the payment of any installment of the principal or interest of the new bond, the bondholder has two remedies. He may require the treasurer of the county to advertise and sell the property described in the bond, in which event there shall be added to the amount necessary to redeem, the cost of advertising and one dollar for a certificate of sale. Or the bondholder may file and maintain a suit to foreclose the bond. The court in which the suit is brought is vested with power to adjudge a lien against the property and to order the same sold under execution to satisfy the demand. The property owner is also charged with the costs of the action, attorney fees for the plaintiff to be fixed by the court, and not to exceed five dollars for search of title. A redemption may be made by the owner of the property within twelve months from the date of sale, upon payment of the amount due and fifty cents for service of the notice of expiration of the period of redemption.

■ It is obvious that the added cost of the refunding and reassessment proceedings under the 1931 act, including the cost of advertising, the cost of preparing the diagram and of making the reassessment and of printing and issuing the new bonds confers no additional benefit on the lands in the district. Those lands were assessed for the full amount of the cost of the improvement under the 1925 act. The added costs were not and could not be included in the amount of the bonds issued in the original proceeding. They did not in any way enter into the consideration for the improvement for which the original bonds were issued. The compensating benefit to the property owner is the warrant, and the sole warrant, for the legislature to impose the burden of a special assessment. (*Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24 [148 Pac. 217, L. R. A. 1918E, 197].) The improvement must confer a special benefit upon the property assessed. (*Irish* v. *Hahn,* 208 Cal. 339 [281 Pac. 385, 66 A. L. R. 1382].) The assessment can be levied only for the actual cost of the improvement "and the local authorities cannot include in the assessment the expense of any other work than such as is necessary to complete the particular improvement in a reasonable and fair mode". (2 Elliott on Roads and Streets, 4th ed., p. 892.) Authorities to the same effect could be multiplied without number, and there appears to be none to the contrary. This is not a case of a reassessment for benefits made necessary by an irregular, defective or void prior assessment proceeding, and in which all the property benefited may be charged with the cost of imposing a valid assessment. Here the property is legally assessed and assessable for the total amount of money expended in constructing the improvement and no more. The petitioner asserts that the land owner will be benefited by proceedings taken under the refunding plan because he may then safely pay his assessment, as the delinquency of other parcels in the district cannot increase his burden temporarily or permanently. It is argued that if he is the owner of several parcels he may pay on such as he is able to pay and permit the others to become delinquent, or he can pay on some parcels lightly assessed and permit those heavily burdened to go delinquent. This would seem to be grim consolation. It is also insisted that under the

new plan building loans can be made more safely, as there would then be no possibility of the delinquency of other parcels lessening the margin of security. This may or may not be true, but in any event it would be far to go to say that the cost of bringing about this result could be made the subject of a special assessment for public improvements.

■ There are many considerations which would appear to render it conclusive that the rights of the property owner are infringed by proceedings under the 1931 statute as applied to the present district. Upon delinquency in payment of the assessment under that act, the property owner is subjected to the following burdens and obligations not included under the 1925 bond issue and assessment plan: (1) After sale by the treasurer or under execution the time allowed him for redemption is cut down from five years to one year. (2) If the sale be made by the treasurer the land owner is required to pay on redemption the sum of one dollar on account of the issuance of a certificate of sale, and a further sum of fifty cents for the service of the notice of the expiration of the period of redemption. (3) If suit be brought against him, at the option of the bondholder, the property owner is chargeable with the costs of suit, with $5 as the cost of a search of title, and the bondholders' attorney fees.

The respondent and interveners insist that the foregoing change in the period of redemption and the additional burdens placed upon the property owner by the 1931 statute, if made applicable to the land owners in said district No. 19, are contrary to the provisions of the state and federal Constitutions, and particularly the provisions thereof prohibiting the impairment of the obligations of contracts. In this connection the petitioner contends that the levying of a special assessment is in the exercise of the sovereign power of taxation which is continuing and may not be bargained away; therefore, it is claimed, no contractual rights have arisen. ■ It is true that in this state the imposition of a special assessment is an exercise of the power of taxation (*Inglewood* v. *County of Los Angeles*, 207 Cal. 697 [280 Pac. 360]), and the petitioner has cited numerous authorities from other jurisdictions in support of its position. But it is not true, under the law of this state, that in the course of tax and special assessment pro-

ceedings the property owner does not acquire certain vested rights which are protected by the Constitution.

It has been held by a long and unbroken line of decisions in this state that the law in force at the time of a sale for nonpayment of taxes governs the right of redemption. The question presented in *Teralta Land etc. Co.* v. *Shaffer,* 116 Cal. 518 [48 Pac. 613, 615, 58 Am. St. Rep. 194], was: "Can the legislature, after a tax sale, lawfully amend the law so as to apply new and more onerous conditions to the right to redeem than those which existed when the sale was made?" The question was answered in the negative on the authority of text-writers and the adjudicated cases. This court quoted with approval from Black on Tax Titles, section 175, as follows: "The right of redemption from a tax sale must be governed by the law in force at the time of sale; it cannot be affected by subsequent legislation", and the following from Blackwell on Tax Titles, fifth edition, section 729: "The law in being at the time of sale governs the right of redemption. The time can be neither lengthened nor shortened by subsequent legislation. . . . The right to redeem is a condition attached to the sale, and the legislature cannot defeat it by a subsequent act. A provision affecting the period of redemption can only apply to sales made after the day on which the act took effect." The following is quoted from *Merrill* v. *Dearing,* 32 Minn. 479 [21 N. W. 721], in support of the rule with the citation of numerous other cases: "The right of property acquired by the purchaser at this sale and the right of redemption remaining to the owner must both be governed by the law in force at the time of sale. Neither, in our judgment, could be either abridged or enlarged by subsequent legislation. This is unquestionably so as to the right of the purchaser. The same rule ought to apply in favor of the owner as against any statute shortening the time to redeem, as it is equally unjust to legislate against the owner of the land as in his favor." This court continued, at page 525: "The enforced sale of property on execution, or for the non-payment of taxes, institutes a contract with the purchaser which cannot be materially altered without his consent. The right of the owner to redeem is perhaps, strictly speaking, one not resting in contract, but is a right vested in him under the law, a right pertain-

ing to the contract itself, and which in reason and justice is not more open to attack than that of the purchaser." This rule has consistently been followed in this state. (See *Collier* v. *Shaffer*, 137 Cal. 319 [70 Pac. 177]; *Johnson* v. *Taylor*, 150 Cal. 201 [88 Pac. 903, 119 Am. St. Rep. 181, 10 L. R. A. (N. S.) 818]; *Biaggi* v. *Ramont*, 189 Cal. 675 [209 Pac. 892]; *Main* v. *Thornton*, 20 Cal. App. 194 [128 Pac. 766]; 24 Cal. Jur., p. 334.)

It is likewise the well-settled law of this state that when valid proceedings for improvements by special assessment have been completed and bonds have been issued to represent the assessments, a contractual relation between the property owner and the bondholder has been established. In *Chapman* v. *Jocelyn*, 182 Cal. 294 [187 Pac. 962, 963], it was said: "A street assessment is a contract and the provisions of the statute in force at the time, providing the manner of its enforcement are a part of such contract. (*Creighton* v. *Pragg*, 21 Cal. 115; *Houston* v. *McKenna*, 22 Cal. 550, 553.) . . . The Constitution forbids the passage of a law impairing the obligation of a contract. (Art. I, sec. 16.) It follows that a law enacted after such contract is made, and which materially alters the remedy of the bondholder to enforce his lien by means of a sale, or the rights of the owner under the law existing at the time the bond was issued, cannot apply to previous contracts and can have only a prospective effect."

The same rule was applied and was deemed controlling in *Jeffreys* v. *Point Richmond Canal etc. Co.*, 202 Cal. 290 [260 Pac. 548]. In that case the holder of street assessment bonds issued under the Improvement Act of 1911, sued to foreclose the bonds. At the time the bonds were issued the law did not provide for foreclosure by suit on the part of the bondholder. After the bonds were issued the statute was amended to authorize such a suit as "a separate, distinct and cumulative remedy" available to the bondholder. It was held that the right of property owners against whose property assessments had been levied and bonds issued therefor under the 1911 act became vested prior to the amendment and could not constitutionally be affected thereby, even under the guise of an additional remedy, as it adversely affected a substantial right of the property owner.

In *Warden* v. *Barnes,* 111 Cal. App. 287 [295 Pac. 569], it was held that a deed issued following proceedings to foreclose a street bond which included a charge of one dollar for a certificate of sale provided for by an amendment to the street law, but not provided for in the law in effect when the bond was issued, was invalid for the reason stated in *Chapman* v. *Jocelyn, supra,* and other like cases. To the same effect see *Oakland S. I. Bond Co.* v. *Fitzmaurice,* 47 Cal. App. 258, 259 [190 Pac. 499]; *Sammon* v. *Wing,* 105 Cal. App. 689 [288 Pac. 711]. In *Security Trust & Savings Bank* v. *City of Los Angeles,* 120 Cal. App. 518 [7 Pac. (2d) 1061, 1064], it was said with reference to bonds issued on property in an improvement district under the 1915 act (Stats. 1915, p. 99), to pay the cost of construction of certain public improvements, and where the question of the applicability of the law in effect at the time of the issuance thereof was directly involved: ''The bonds constitute a contract between the bondholders and the taxpayers in the district. Among other things the contract (bond) contains the provision that 'the principal and interest of this bond are payable exclusively out of taxes levied upon the taxable property in said Municipal Improvement District No. 27', and to substitute any other method for the payment of the bond would be to change the express terms of the contract, which is not permissible (citing cases).''

The petitioner necessarily concedes that if it prevail the cases of *Chapman* v. *Jocelyn, supra, Jeffreys* v. *Point Richmond Canal Co., supra,* and other cases in this state to the same effect, must be overruled. It is insisted that they be not followed for the stated reason that they are ill-considered, are contrary to the doctrine of other cases in this state and contrary to decisions in other jurisdictions. The California cases cited as authority for the statement are not in point. Three of them correctly hold that the property owner is not a party to the improvement contract and the others are not inconsistent with the declared doctrine that when the special assessment proceedings are completed a contractual relation arises as between the bondholder and the property owner to such an extent that the substantial rights of either may not be impaired by subsequent legislation. It may be conceded that cases in other jurisdictions

are in support of the petitioner's position, but we cannot agree that those against its contentions in this state are ill considered. They are based on sound principles of public policy for the protection of both the bondholder and the property owner. In any event they are the established law of this state and as they constitute a rule of property they should not be set aside except for cogent reason not now made to appear.

Two additional cases relied upon by the petitioner require mention. The first is *La Mesa etc. Irr. Dist.* v. *Halley,* 197 Cal. 50 [239 Pac. 719, 724]. That case involves the right of the legislature to change the general powers of irrigation districts, the method of their management and the manner of issuing bonds for carrying out the purposes of the district. It was contended therein that the terms of the statute in force at the time of the organization of an irrigation district constituted a contract between the state and the individual land owners in the district who as electors voted to create the district, which could not be changed or impaired by subsequent legislation. The contention was rejected and this court very properly pointed out the distinction between the contractual relation existing after a completed election proceeding, as in *Peery* v. *City of Los Angeles,* 187 Cal. 753 [203 Pac. 992, 19 A. L. R. 1044], and the absence of such relation before an election for the issuance of bonds had taken place, stating in that connection, ''that the doctrine that the legislature may not change the law governing the issue and terms of disposition of bonds by cities was given application to a condition wherein certain bonds of the city of Los Angeles had already been voted and issued prior to the making of a change in the law permitting such bonds to be disposed of below par in contravention of the terms of the law in existence at the time of the election, whereby the electors voted to issue and sell bonds of the city at par and not otherwise''.

The second case to be noticed is *Palo Verde Irr. Dist.* v. *Seeley,* 198 Cal. 477 [245 Pac. 1092]. That case involved the validity of refunding bonds of the irrigation district. The legislature by special act established the boundaries of the irrigation district and thereby found that all of the territory therein would be benefited by the organization of the district and by any works and improvements undertaken

and carried out thereby. Included within this territory were the lands within an old levee district, an old drainage district and a mutual water company. It was declared by the statute that all of the improvements constructed by the old districts and the water company would be advantageous and beneficial to all of the lands within the new district, including lands therein not within any of the old districts. The question whether the new district should be organized was submitted to the vote of the property owners of the district and was carried. The question whether the refunding bonds should be issued was also submitted to a vote and was overwhelmingly carried. The purpose of the refunding bonds was to retire in part the bonds of the old districts and the water company. The contention was made, as here, that the issuance of the refunding bonds would be an impairment of alleged contract rights of the taxpayers in the levee district by reason of the fact that the personal property in that district would be relieved from the burden of paying general taxes to satisfy the levee district bonds. It was held that no such rights were impaired, and the fact that the legislature had seen fit to lighten partially the burden of the taxpayers in that district did not make it obligatory on the legislature permanently to lessen it. The organization of the irrigation district and the issuance of the refunding bonds having been authorized by the voters in the district, it was declared that the voice of the acquired number must be deemed the consent of the whole. In the case at bar the consent of those required to bear the added burdens imposed by the statute under attack has not been obtained. These two cases cannot serve to support the petitioner's position.

 Stress is laid upon the fact that the bonds issued and imposed on the lands in district No. 19 have reached the channels of trade and that unless the holders thereof are given relief under the proposed reassessment and refunding plan there is little hope of realization upon their investments. Their plight, under such a situation, is unfortunate, but they must be held to the terms of their contract when the rights of the property owners would otherwise be violated.

It is insisted that unless the proposed refunding plan is made effective the property owners in the district cannot

separately pay their county and school taxes because they may not under the law be paid separate and apart from the special assessment tax. The answer is that the legislature has so provided. It is assumed that it would be competent for the legislature to provide for separate tax bills to represent the special assessments. This might have been done but instead thereof the legislature, at its last session, made doubly sure that it should not be done by amending section 41 of the act of 1925 and providing that "such special assessment taxes shall be collected and enforced together with, and not separately from, taxes for county purposes or for municipal purposes, as the case may be".

It follows from what has been said that the Reassessment and Refunding Act of 1931 is not applicable to the proceedings heretofore taken in Acquisition and Improvement District No. 19 in San Diego County under which the *ad valorem* assessments were provided to satisfy the obligation of the bonds sought to be refunded.

The peremptory writ is denied and the alternative writ is discharged.

Waste, C. J., Tyler, J., *pro tem.*, Curtis, J., Preston, J., Seawell, J., and Langdon, J., concurred.

Rehearing denied.