In re **RITTER RANCH DEVELOPMENT, L.L.C.**, a Delaware limited liability company, Debtor.

**Ritter Ranch Development, L.L.C.,
a Delaware limited liability
company, Appellant,**

v.

**City of Palmdale; Franklin High Yield
Tax–Free Income Fund; and Franklin
California High Yield Municipal
Fund, Appellees.**

BAP No. CC–00–1027–MoRiP.
Bankruptcy No. SV 98–25043–GM.
Adversary No. SV 99–01641–GM.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 20, 2000.

Decided Nov. 29, 2000.

David L. Neale, Levene, Neale & Bender, L.L.P., Los Angeles, CA, for Ritter Ranch Development, L.L.P.

Stephen R. Orr, Richards, Watson & Gershon, Los Angeles, CA, for City of Palmdale.

James O. Johnston, Hennigan, Nercer & Bennett, Los Angeles, CA, for Franklin High Yield, et al.

Before MONTALI, RIMEL,[1] and PERRIS, Bankruptcy Judges.

1. Hon. Whitney Rimel, Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter and section references are to the Bankruptcy

## OPINION

MONTALI, Bankruptcy Judge.

Debtor Ritter Ranch Development, L.L.C., a Delaware limited liability company and Chapter 11 debtor in possession ("Ritter Ranch"), seeks a declaratory judgment that the holders of $40.7 million in community development bonds (the "Bondholders") are "creditors" in this case. Ritter Ranch apparently wants the Bondholders to be creditors so that it can either cure defaults and resume regular payments, or else attempt to use the Bankruptcy Code's "cram-down" provisions to modify the Bondholders' rights without their consent. The bankruptcy court entered a judgment dismissing Ritter Ranch's claim for declaratory relief with prejudice. We hold that the Bondholders are not creditors, and accordingly we AFFIRM.[2]

### I. FACTS

Ritter Ranch is a planned-community developer. It owns a tract of approximately 7,285 acres in or around the City of Palmdale, California (the "City"). The bulk of that land (the "Property") has been annexed by the City and designated as the City of Palmdale Community Facilities District 93–1 (the "District").

The City issued $50 million of bonds, later reduced to $40.7 million (the "Bonds"), to finance development and construction of public facilities on the Property pursuant to California's Mello–Roos Community Facilities Act of 1982, California Government Code Sections 53311 *et seq.* (the "Mello–Roos Act"). The Bonds are payable solely from special tax revenues earned from the Property and from special accounts holding such revenues, proceeds of the Bonds themselves, and earnings on the funds held in the accounts. These special tax revenues and accounts

Code, 11 U.S.C. §§ 101–1330, and all rule references are to the Federal Rules of Bankruptcy Procedure.

are pledged as security for the Bonds. The City is obligated to use the special tax revenues to pay the Bonds, and does so through a fiscal agent. The City is granted a continuing lien against the Property to secure the payment of the special taxes, and it has the ability and obligation to foreclose upon the Property or portions thereof if there is a default in payment of the special taxes. However, the Bonds are "limited" obligations: the Bondholders have no rights against the City's funds other than the special tax revenues and accounts, nor can the Bondholders accelerate the indebtedness, bring an action against Ritter Ranch, or foreclose on the Property.

Ritter Ranch acquired the Property as of August 31, 1998. The development was not successful, and on October 30, 1998 Ritter Ranch filed a voluntary chapter 11 petition. Thereafter Ritter Ranch failed to make a payment due on February 15, 1999 under a pre-petition settlement agreement.

On September 27, 1999 Ritter Ranch commenced an adversary proceeding against the Bondholders and the City. In the third claim for relief of its complaint (the "Complaint") Ritter Ranch sought a determination that the Bondholders are "creditors." The Complaint alleges that the City is "just an agent" and a "mere conduit for purposes of collecting and transmitting the taxes to the Bondholders"

and that the Bondholders are "akin to beneficiaries under a deed of trust . . . ." The Complaint further alleges that the City and District have claimed they "lack authority" under the relevant documents to make any arrangements to restructure "the delinquent special taxes." In its current posture the third claim for relief is directed solely against the holders of a senior class of the Bonds—Franklin High Yield Tax–Free Income Fund and Franklin California High Yield Municipal Fund (collectively, "Franklin").[3]

On November 12, 1999 Franklin filed its motion to dismiss the Complaint's third claim with prejudice for failure to state a claim upon which relief can be granted. As grounds for the motion Franklin asserted that the Complaint's allegations do not establish that the Bondholders have any enforceable obligation against Ritter Ranch.

At a hearing on another matter on December 8, 1999 the bankruptcy court apprized the parties of its tentative decision to grant Franklin's motion to dismiss, and on December 10, 1999 Ritter Ranch filed a supplemental memorandum.[4] Franklin's motion came on for hearing on December 14, 1999.

At the start of that hearing the bankruptcy court stated that its tentative decision still was to grant the motion to

---

3. The complaint states that on information and belief a subordinate class of the bonds is held by various individuals and entities, and that Ritter Ranch will seek leave to amend the complaint to set forth the names of such additional defendants when they are ascertained.

4. There is no record that Franklin objected to the apparent untimeliness of Ritter Ranch's supplemental memorandum and a supporting declaration. Any such objection is waived. Franklin filed a declaration in connection with the motion to dismiss. That declaration is in effect a request for judicial notice. It attaches copies of Ritter Ranch's bankruptcy Schedule D and excerpts from Exhibit 1 to the Complaint. There is no record that Ritter Ranch objected to these documents. Moreover, they appear to be properly before the

bankruptcy court. *See Stone v. Writer's Guild of Am. West, Inc.,* 101 F.3d 1312, 1313–1314 (9th Cir.1996) (on motion to dismiss court may consider documents attached to complaint and documents referenced in complaint whose authenticity is not disputed); *Shaw v. Hahn,* 56 F.3d 1128, 1129 n. 1 (9th Cir.) (on motion to dismiss court may look to matters of public record), *cert. denied,* 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 336 (1995).

The panel's recitation of facts includes some minor details from documents filed by the City in connection with its own motion to dismiss, which was limited to the Complaint's first and second causes of action. Ritter Ranch included those documents in its excerpts of record and there is no record that Ritter Ranch objected to their submission.

dismiss because "there is no direct relationship between the debtor and the bondholders," there "is no contract to be assumed or in which there could be an action for breach," the Bondholders "couldn't foreclose on the property or tell the developer to build anything" and "[e]ven if [as Ritter Ranch alleged] the bondholders gave instructions to the [C]ity or the [District] and participated in drafting the [City's] plan … this would not be enough to make them creditors in this case."[5] After hearing oral argument the bankruptcy court adopted its tentative ruling and on January 3 and 4, 2000 the bankruptcy court entered a written order and a judgment granting Franklin's motion and dismissing the Complaint's third claim for relief with prejudice. Ritter Ranch timely appealed. Ordinarily an order dismissing one of three claims in a complaint would not be an appealable final order. However, the bankruptcy court specifically entered a final judgment on the third claim for relief pursuant to Rule 54(b), Fed.R.Civ.P., applicable pursuant to Rule 7054(a). The judgment is thus final and appealable.[6]

## II. ISSUES

A. Whether Ritter Ranch's third claim for relief, for a declaration that the Bondholders are "creditors," fails to state a claim upon which relief can be granted.

B. Whether the bankruptcy court properly denied Ritter Ranch leave to amend the Complaint.

## III. STANDARD OF REVIEW

■ Questions of statutory interpretation are reviewed *de novo*. *ECPG (Peoria) Associates Limited Partnership v. Building Block Child Care Centers, Inc. (In re Building Block Child Care Centers, Inc.)*, 234 B.R. 762, 765 (9th Cir. BAP 1999).

■ A dismissal without leave to amend is reviewed *de novo*. *Naert v. Daff (In re Washington Trust Deed Service Corp.)*, 224 B.R. 109, 112 (9th Cir. BAP 1998).

## IV. DISCUSSION

Ritter Ranch argues that the Bondholders are creditors under Sections 101(5) and 101(10) and 102(2). Section 101(5) provides, in full:

(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contin-

---

**5.** The bankruptcy court expressed the view that Ritter Ranch probably wanted the Bondholders to be "creditors" so as to "use the cram-down provisions and redo the bonds in [a] plan [of reorganization]." Ritter Ranch did not dispute that view at the hearing. However, Ritter Ranch's First Amended Plan of Reorganization, filed August 13, 1999, proposes to leave the Bondholders' claims unimpaired. Therefore Ritter Ranch may have an alternative reason for treating the Bondholders as "creditors"—namely, to use the Bankruptcy Code to cure defaults that are not curable under California law.

**6.** On February 24, 2000 the bankruptcy court entered its order confirming a plan of reorganization proposed by the City (the "Plan"). The parties have not provided this panel with

a copy of the Plan, but they assert that its effective date has been delayed and therefore its confirmation does not render this appeal moot.

Because the Plan has not become effective, Ritter Ranch might have a remedy if this panel were to reverse the bankruptcy court. For example, Ritter Ranch could seek to have the order confirming the Plan vacated and then seek confirmation of its own plan instead. Without expressing any opinion whether such relief would be appropriate, the possibility of such relief means that this appeal is not moot. *Willamette Water Front, Ltd. v. Victoria Station Inc. (In re Victoria Station Inc.)*, 88 B.R. 231 (9th Cir. BAP 1988), *aff'd* 875 F.2d 1380 (9th Cir.1989).

gent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

Section 101(10) provides in relevant part:

(10) "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]

Section 102(2) provides, in full:

In this title—

(2) "claim against the debtor" includes claim against property of the debtor[.]

■ The bankruptcy court specifically acknowledged the broad definition of "creditor" at the December 8, 1999 hearing, citing its own decision in *In re Aslan*, 65 B.R. 826, 829–831 (Bankr.C.D.Cal.1986) (Mund, J.), *aff'd in relevant part sub nom Aslan v. Sycamore Investment Co. (In re Aslan)*, 909 F.2d 367 (9th Cir.1990). As the Ninth Circuit has held, the Bankruptcy Code adopts a " 'broadest possible definition' of 'claim' [that] is designed to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.' " *California Dept. of Health Services v. Jensen (In re Jensen)*, 995 F.2d 925, 929 (9th Cir.1993) (quoting legislative history).

■ State law generally determines such "legal obligations." *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 49 (9th Cir. BAP 1997) (existence of claim is generally determined by state law), *citing Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ Ritter Ranch argued to the bankruptcy court that under state law the Bondholders have a "right to payment" and a right to initiate a foreclosure action against the Property. This is not accurate. The Bondholders themselves cannot demand payment from any owner of the Property and cannot foreclose. They can insist that the City collect the special taxes and foreclose but they cannot do so themselves. The City's lien is for the special taxes but not for indebtedness under the Bonds. When the City forecloses title goes to the City not to the Bondholders.[7]

Nevertheless, Ritter Ranch argues that it has legal obligations to the Bondholders. Ritter Ranch cites California cases stating that bonds issued under the Mello–Roos Act create a contract, or at least a relationship analogous to a contract, between property owners and the holders of the bonds. *See San Diego County v. Childs*, 217 Cal. 109, 120–121, 17 P.2d 734, 738–739 (1932); *Sutter Basin Corp. v. Brown*, 40 Cal.2d 235, 241–243, 253 P.2d 649, 652–653 (1953), *cert. denied sub nom. Brown v. Sutter Basin Corp., Ltd.*, 346 U.S. 855, 74 S.Ct. 71, 98 L.Ed. 369 (1953); *Schuhart v. Pinguelo*, 230 Cal.App.3d 1599, 1604, 282 Cal.Rptr. 144, 147 (1991). Indeed in the *Sutter Basin* case the court stated, "It cannot be questioned that, upon issuance of the bonds, a contract was created between the property owners and the bondholders." *Sutter Basin*, 40 Cal.2d at 241, 253 P.2d at 652.

However, as Franklin (joined by the City) points out, these cases have been distinguished as using "contract" terminology only to prevent "impairment of contract" by subsequent legislation:

Those cases [*Sutter Basin* and *Schuhart*] hold a change in laws made after the issuance of assessment bonds which adversely impacts either bondholders or the owners of property secured by the bonds is an impermissible impairment of

---

**7.** Ritter Ranch continues to argue in its briefs to this panel, as it argued before the bankruptcy court, that the "Bonds are secured by all parcels within the [D]istrict" and that the Bondholders' remedy "is to foreclose" on the Property. These statements are very misleading. In fact, as Ritter Ranch acknowledges elsewhere in its papers, it is the City, not the Bondholders, that has a lien against the Property and that has the right to foreclose.

contract under the federal and California Constitutions.

*Community Facilities Dist. No. 88–8 of the County of Riverside v. Harvill,* 74 Cal.App.4th 876, 880, 88 Cal.Rptr.2d 405, 408 (1999).

In the *Harvill* case the property owner argued that contractual defenses could be raised in an action to foreclose a special tax lien because the relationship between the property owner and the bondholders was allegedly contractual. The court rejected that argument, holding that reliance on *Sutter Basin* and *Schuhart* was misplaced, and noting that California's public policy is to insulate bondholders from disputes between the property owners and the community facilities district.

Similarly, in *Childs* the California Supreme Court characterized its own doctrine as providing that "a contractual relation arises as between the bondholder and the property owner *to such an extent* that the substantial rights of either may not be impaired by subsequent legislation." *Childs,* 217 Cal. at 121, 17 P.2d 734 (emphasis added). *See also Sutter Basin,* 40 Cal.2d at 241, 253 P.2d 649 (quoting similar language); *Schuhart,* 230 Cal.App.3d at 1606 n. 4, 282 Cal.Rptr. 144 (acknowledging authority that "the 'only true contract' is between the issuing entity and the bondholder" and noting that the California Supreme Court has used "contract law concepts" to prevent change of assessment terms once bonds are issued) (citations omitted).

Ritter Ranch argues that, even if there is no contractual relationship, all that is needed is "some prepetition relationship, such as contract, exposure, impact, or privity" between a debtor and a putative creditor. *See In re Piper Aircraft Corp.,* 162 B.R. 619, 627 (Bankr.S.D.Fla.1994) (conduct and prepetition relationship can give rise to claim), *aff'd sub nom. Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp.,* 168 B.R. 434 (S.D.Fla.1994), *aff'd,* 58 F.3d 1573 (11th Cir.1995).

Ritter Ranch is partially correct. The Ninth Circuit has adopted "[w]hat might be called the 'fair contemplation' test" for determining when the relationship between a debtor and a putative creditor gives rise to a claim. *Jensen,* 995 F.2d at 930. That test has been interpreted to be the equivalent of "the 'conduct plus,' 'prepetition relationship' or *Piper* test." *Hassanally,* 208 B.R. at 52 (citations omitted). Moreover, claims have been recognized under these tests beyond the typical context of mass torts and environmental liabilities, and even where rights are not yet enforceable under state law. *Hassanally,* 208 B.R. at 51 (applying *Jensen* to construction defect claims, and noting that Ninth Circuit and other circuits have rejected the "right to payment" or "accrued state law claim" test).

However, Ritter Ranch has cited no case in which a claim arises when there is neither tortious conduct nor a contractual relationship. Moreover, under the *Jensen* test the Bondholders could not have "fairly contemplated" that they would have a direct claim against Ritter Ranch as of the petition date. *See Piper,* 162 B.R. 619 (potential victims of future airplane mishaps were not creditors).

In addition, as Franklin points out, there is authority that creditors of a debtor's creditors do not hold any "claim" against the debtor itself. In a case involving a lessee-debtor, its landlord's mortgagee was held to have no claim against the debtor, and therefore the automatic stay did not apply and the mortgagee could obtain appointment of a receiver for the landlord. Although the receiver would then be a creditor who could seek relief from the automatic stay, the bank was not a creditor. *Roslyn Savings Bank v. Comcoach Corp. (In re Comcoach Corp.),* 698 F.2d 571, 574–575 (2d Cir.1983). Summarizing this case, another court has stated in dicta:

> A creditor, under the Code, is one who has a claim against the debtor or the estate. The concept does not … en-

compass a creditor of one of the debtor's creditors.

*Southern Boulevard, Inc. v. Martin Paint Stores (In re Martin Paint Stores),* 207 B.R. 57, 61 (S.D.N.Y.1997) (citations omitted) (case involved standing to contest assignment of lease). *See also Kish v. Verniero (In re Kish),* 221 B.R. 118 (Bankr. D.N.J.1998) (entities to which department of motor vehicles was required to pay a percentage of fees collected were not creditors); *Mason & Dixon Lines, Inc. v. First Nat. Bank of Boston,* 86 B.R. 476, 479–480 (M.D.N.C.1988) (under loan participation agreement, participant banks generally are not creditors), *aff'd,* 883 F.2d 2 (4th Cir. 1989); *Ruyle, O'Dorisio & Kearney v. McGuff (In re McGuff),* 3 B.R. 66, 70 (Bankr.S.D.Cal.1980) (under Bankruptcy Act of 1898, judgment creditor of debtor's judgment creditor was not a "creditor" of debtor, notwithstanding that California law permitted lien on judgment and any recovery thereon).

Ritter Ranch contends, however, that the City is not merely a creditor-of-a-creditor but is an agent for the Bondholders analogous to a trustee under a deed of trust. There is some support for this argument. The *Harvill* court stated that a foreclosing municipality "is a nominal plaintiff only, suing on behalf of bondholders ..." and "the foreclosure remedy is solely for the benefit of the bondholders." *Harvill,* 74 Cal.App.4th at 880, 882, 88 Cal.Rptr.2d at 407, 409. The *Sutter Basin* court stated that "[t]hrough the trustee of the bond fund, the bondholders may enforce their right to payment by a sale of land upon which a call has become delinquent." *Sutter Basin,* 40 Cal.2d at 243, 253 P.2d at 653. The City has little if any discretion under the Mello–Roos Act and the Bond documents. *See In re City of Columbia Falls,* 143 B.R. 750, 756–758, 761–763 (Bankr.D.Mont.1992) (city under similar statutory scheme had no discretion in use of special tax revenues). Ritter Ranch argues:

> the bonds here at issue are nothing more than non-recourse loans made to [Ritter Ranch] by the [Bondholders]. The City is merely the conduit for such loans to afford the repayment of such loans tax-exempt status.

The flaw in Ritter Ranch's analysis is that bonds under the Mello–Roos Act are specifically designed not to give the holder any rights against the property in the community facilities district or its owners. In addition to making the bonds tax-exempt, California public policy is to insulate bondholders from disputes over the payment of a community facilities district's special taxes. *See, e.g., Harvill,* 74 Cal. App.4th 876, 88 Cal.Rptr.2d 405 (1999) (affirmative defense of failure of consideration could not be raised in defense to foreclosure action for non-payment of special taxes). Therefore, unlike a beneficiary under a deed of trust, the Bondholders have no right to payment directly from Ritter Ranch or the Property. To restate the relationship in Ritter Ranch's own terms, the Bonds are the non-recourse loans to the City; the City's sole source of repayment are the special taxes and their proceeds.[8]

For the same reason, Ritter Ranch's analogy to "alter ego" cases is inapposite. *See, e.g., Playboy Enterprises, Inc. v. Terri Welles, Inc.,* 78 F.Supp.2d 1066, 1096– 1099 (S.D.Cal.1999). Although Ritter Ranch argues that the City was acting entirely at Franklin's direction, that is largely the consequence of the Mello–Roos Act.[9] The courts recognize alter egos when

---

8. Franklin also points out that municipalities and community facilities districts have independent motivations to ensure that bonds are paid in full and on time, because otherwise their credit ratings will be impaired. Franklin notes that creditworthiness is a concern under the Mello–Roos Act. *See* Cal. Gov't Code § 53312.7(a)(2) (requiring municipality to issue statement concerning credit quality).

9. Ritter Ranch cites the City's internal resolutions and reports, the City's arguments before the bankruptcy court that it is acting at the Bondholders' behest, and a letter agreement between the City, Franklin and a developer

a party is evading its lawful obligations or using another entity for an inequitable purpose, not when a party is doing precisely what the law intended. *See* 9 Witkin, *Sum. Cal. Law (9th)*, Corporations §§ 12–23 (1989 and Supp.2000); *Playboy*, 78 F.Supp.2d at 1098–1099 (no alter ego liability, assuming sole shareholder was corporation's only source of income and formed corporation solely for tax purposes, because no genuine issue whether corporation was formed to "perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose").

■ The bankruptcy court also noted that a "creditor" status is determined as of the commencement of the bankruptcy case. Therefore any post-petition actions by the Bondholders is irrelevant, including their alleged participation in formulating the City's plan of reorganization.

Ritter Ranch argues that California's policy of protecting bondholders conflicts with the Bankruptcy Code's broad definition of "claim." This might be a different case if Ritter Ranch could show that California was evading bankruptcy policy by enacting a statute that treated bondholders as creditors for some purposes but not for others. *See generally Baker & Drake, Inc. v. Public Service Comm'n of Nevada (In re Baker & Drake, Inc.)*, 35 F.3d 1348, 1352–1355 (9th Cir.1994) (Bankruptcy Code does not preempt state regulation requiring taxi drivers to be employees rather than independent contractors). There is no evidence of such evasion or conflict with the Bankruptcy Code in this case. Moreover, assuming without deciding that there is any conflict between the Bankruptcy Code and the Mello–Roos Act, we agree with the bankruptcy court that the latter prevails in this case:

> [T]here are strong public policy reasons in terms of having bond financing ... to

create facilities, to create housing, to create subdivisions.... [I]t is not the intent of Congress to interfere with that ... [and] in this case, the specific public policy of the State of California to encourage this type of development is going to overwhelm and overrule any more general, very broad definition that Congress put into Section 101[5] ... of the [Bankruptcy] Code.

In sum, neither a literal reading of the Bankruptcy Code and California law nor public policy reasons justify treating the Bondholders as "creditors" of Ritter Ranch. The bankruptcy court properly dismissed the Complaint's third claim for relief.

■ The final issue is whether the bankruptcy court properly denied leave to amend the Complaint. Denial of leave to amend is appropriate where "it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir.1998) (citation omitted). Ritter Ranch has not suggested any set of facts under which the Bondholders would be "creditors." The bankruptcy court's denial of leave to amend was proper.

## V. CONCLUSION

The Bondholders are not "creditors" of Ritter Ranch within the meaning of Section 101(10). Ritter Ranch has suggested no facts or legal theory under which they could be creditors in this case. The Bankruptcy Court's order and judgment dismissing the Complaint's third claim for relief with prejudice is therefore AFFIRMED.

that was allegedly "selected" by Franklin to develop the Property.

The letter agreement was not part of the record before the bankruptcy court, and the Bondholders properly object that it therefore should not be accepted by this panel as part

of the record. *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 354 n. 3 (9th Cir. BAP 1997). Moreover, the panel has reviewed that letter and it would not change the analysis.